Hylan H. Kout and Suzanne J. Kout v. Commissioner.
Kout v. Commissioner
Docket No. 5359-69
United States Tax Court
T.C. Memo 1972-212; 1972 Tax Ct. Memo LEXIS 47; 31 T.C.M. (CCH) 1044; T.C.M. (RIA) 72212; October 2, 1972
Hylan H. Kout, pro se, 420 Lincoln Road, Miami Beach, Fla. Meno W. Piliaris, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax as follows: Taxable Year
Amount
1965
$ 454.94
1966
1,248.61
Due to concessions, the issue remaining for adjudication is whether Hydaran Corporation was a viable corporation for Federal income tax purposes. This determination will lead us to a conclusion relating to: (a) Whether corporate distributions made during 1966 are taxable to petitioners as dividends within the purview of section 301, Internal Revenue Code of 1954; [1] and (b) Whether *49 deductions claimed by petitioners on their 1965 and 1966 Federal income tax returns with regard to real estate taxes and interest on property titled in the name of Hydaran Corporation are allowable as deductions to petitioners. Findings of Fact Some of the facts have been stipulated. The stipulation, together with the exhibits attached thereto, are incorporated herein by this reference. Hyland H. Kout (hereinafter referred to as petitioner) and Suzanne J. Kout, are husband and wife and their legal residence was Miami Beach, Florida, as of the date their petition was filed with the Tax Court. Their joint Federal income tax returns for the calendar years 1965 and 1966 were filed on the cash basis with the district director of internal revenue at Jacksonville, Florida. Petitioner, during 1965 and 1966 and for many years prior thereto, was an attorney who practiced law in Dade County, Florida. Prior to November 1962, petitioner and his wife owned at least five parcels of vacant real estate. Due to domestic difficulties which had arisen between the above mentioned parties, petitioner *50 formed Hydaran Corporation (hereinafter referred to as Hydaran) with the intention of conveying the real estate to the corporation. Hydaran was incorporated under the laws of the State of Florida on November 8, 1962, by petitioner, George J. Alboum (hereinafter referred to as Alboum) and Rita Kurland (hereinafter referred to as Kurland). The first meeting of the corporation was held on November 9, 1962, at which time the corporation was formally organized and the directors and officers were elected. Immediately thereafter Alboum and Kurland resigned as directors and officers in favor of Norman Kout and Percy W. Friedlander. Simultaneously they assigned their "incorporators subscription" to petitioner. Though 50 shares of capital stock were authorized to be outstanding, no stock certificates were ever issued. The Certificate of Incorporation of Hydaran, filed with the Florida Secretary of State, characterized the business to be transacted as follows: (a) To acquire by purchase or otherwise real estate of all descriptions, either located in the State of Florida or elsewhere. To hold the same for investment or resales; to own, operate, subdivide, lease, let, mortgage, encumber, sell *51 or otherwise dispose of the same, and to do all things necessary and proper arising out of the ownership of such real estate. (b) To have all powers necessary, needful or desirable for full and complete exercise of the right to act as principal, agent, broker or purchaser in any form of buying, selling, leasing, renting or disposing of real estate and of improving the same, and to buy, sell and deal generally in commercial paper and securities of all kinds. * * * (d) To purchase, build, construct, maintain and operate hotels, apartment houses, office buildings and private 1046 dwellings either for itself or for others. To build, construct, repair and maintain roads and highways and to conduct any other general business. (e) To lend money either with or without security, and to such persons and upon such terms and conditions as the company may think best. (f) The corporation shall have the power to borrow money and to secure the sums by mortgage on all or any part of its properties; to issue bonds and sell and dispose of the same; to pledge its property and credit for the redemption of said bonds and do and perform all such other and further things, acts and deeds in the *52 conduct and management of its business as an individual might or could legally do. (g) The emuneration [sic] of special powers above set forth, shall not be construed as a limitation upon the powers of the corporation and the company shall, in addition to the powers usually granted to corporations organized under the Laws of the State of Florida, have such other and further powers necessary for the attainment and furtherance of its objects. On November 19, 1962, petitioner and his wife conveyed by deed to Hydaran the following properties: Tracts 41 and 42 of Florida Fruit Lands Company's Subdivision No. 1, in Section 9, Township 52 South, Range 40 East, according to the Plat thereof, recorded in Plat Book 2, at page 17, of the Public Records of Dade County, Florida. (Hereinafter referred to as Tracts 41 and 42.) Lots 7, 8 and 10, also known as Tracts 7, 8 and 10, in the Northwest quarter (NW 1/4), and Lots 9 and 22, also known as Tracts 9 and 22, in the Southwest quarter (SW 1/4), of Section 28, Township 52 South, Range 40 East, according to the Plat thereof, recorded in Plat Book 2, page 68 of the Public Records of Dade County, Florida. (Hereinafter referred to as Tracts 7, *53 8, 10, 9 and 22.) The South one-half (S 1/2) of Tract 34 in Section 27, Township 52 South, Range 40 East, according to the Subdivision of the said Section by the Florida Fruit Lands Company, Plat of which is filed in Plat Book 2, at page 17 of the Public Records of Dade County, Florida. (Hereinafter referred to as Tract 34.) An undivided one-fourth (1/4) interest in and to Section 12, Township 59 South, Range 39 East, Dade County, Florida. (Hereinafter referred to as Tract 12.) Lots 16 and 17, Block 162, Twelfth Addition to Hialeah, a subdivision, according to the Plat thereof, recorded in Plat Book 8, at page 127 of the Public Records of Dade County, Florida. (Hereinafter referred to as Tracts 16 and 17.) Subject to: 1. All outstanding mortgages of record. 2. Restrictions, limitations and easements of record. 3. Taxes for the year 1962 and subsequent years. Tracts 41 and 42 at the time of their conveyance to Hydaran were subject to an $11,000 mortgage executed on February 26, 1962, by petitioner as mortgagor and Hyman Friedman (hereinafter referred to as Friedman) and his wife, as mortgagees. Tracts 7, 8, 10 and 9 were also subject to a mortgage executed on February 13, 1962, by *54 petitioner as mortgagor and Murray A. Shaw (hereinafter referred to as Shaw) as mortgagee. The principal of this latter mortgage totaled $16,000. On May 16, 1963, petitioner as president and Percy W. Friedlander as secretary certified to the Mercantile National Bank of Miami Beach, that said bank had been designated by proper corporate resolution the depository of corporate funds and that such funds could be withdrawn by petitioner's signature. Thereupon, the bank opened a corporate bank account in the name of Hydaran. From the time of its incorporation Hydaran entered into a series of legal transactions with regard to the above noted property, which necessitated the execution of deeds, notes and mortgages. Such transactions are represented by the following chronological accounting. By use of a purchase money mortgage Hydaran on February 6, 1963, conveyed Tract 8 to Nathan and Luba Friedman (hereinafter referred to as Nathan). [2] The consideration received for such property was $4,500 representing a 6 percent interest bearing note. This note was discounted and the proceeds in the amount of $3,915.99 were deposited on May 16, 1963 in the corporate bank account. Shortly thereafter *55 said funds were then withdrawn by petitioner. 1047 On May 8, 1963, Hydaran executed a mortgage deed on Tract 22 to secure the payment of a $6,000 loan obtained from Lina H. Strong (hereinafter referred to as Strong) the mortgagee. The corporate bank account fails to reflect a deposit which could be attributable to this transaction. By warranty deed dated May 24, 1963, Hydaran conveyed Tracts 16 and 17 to Universal Aircraft Parts, Inc. (hereinafter referred to as Universal). The deed provided that the transfer was made subject to a mortgage in the amount of $2,050 held by Betty Hathaway (hereinafter referred to as Hathaway). [3] The record fails to disclose the consideration paid for such property and the corporate bank account fails to reflect a deposit which could have stemmed from this sale. *56 On August 22, 1963, Hydaran executed a mortgage deed on Tract 34 to secure a $2,050 loan received from Hathaway, the mortgagee. The proceeds of this loan in the amount of $1,950 were deposited in the corporate bank account on August 23, 1963. Petitioner on September 2, 1966, satisfied this loan and mortgage by the payment of $2,050 from his personal account to Strong. [4]
A mortgage deed on Tracts 41 and 42 was executed February 18, 1964, naming Hydaran as mortgagor and Isaac Rousso (hereinafter referred to as Rousso) as mortgagee. [5] Such document was initiated to secure a $12,500 loan Hydaran had received from Rousso. Twelve thousand three hundred and ninety-three dollars and one cent of this amount was deposited in the corporate bank account on February 28 and March 11, 1964. On June 8, 1964, Hydaran satisfied a portion of this obligation by the payment of $6,250 to Rousso. [6] Rousso, in turn, executed a partial release of mortgage to reflect the reduced obligation. A "Satisfaction of Mortgage" was executed by *57 Rousso on June 5, 1969 in favor of Hydaran. The record fails to disclose the origin of the funds applied to fully satisfy this obligation. On February 28, 1964, a "Partial Release of Mortgage" was executed by Shaw, the mortgagee releasing Tract 9 from inclusion within the February 13, 1962 mortgage. Shortly thereafter, on March 18, 1964, Hydaran issued a check for $5,000 to Shaw. An "Opinion On Title and Guarantee of Title Mortgagee" was executed on March 23, 1964, with regard to Tract 9. It certified the validity of the mortgage executed between Hydaran as mortgagor and Strong as mortgagee on the above noted property. Such mortgage secured a $5,000 advance from Strong. The facts *58 do not disclose the recipient of the funds. By warranty deed dated May 27, 1964, Hydaran conveyed the eastern one-half of Tracts 41 and 42 to Universal for a total consideration of $18,000. This amount was deposited in the corporate account on June 8, 1964. On March 29, 1965, Hydaran executed a mortgage deed on Tracts 7 and 10 to secure a $12,500 loan received from Rousso, the mortgagee. [7] A "Satisfaction of Mortgage" was executed by Rousso on June 5, 1969. The record fails to disclose the origin of the funds applied to satisfy this obligation. By warranty deed dated September 9, 1966, Hydaran conveyed Tract 34 to Somers Equipment Company, Inc. (hereinafter referred to as Somers) for a total consideration of $14,250. Hydaran's basis in the property was $2,500, the costs of sale were $1,249.70 and therefore *59 the profit realized totaled $10,500.30. The net proceeds of this sale in the amount of $13,000.30 ($14,250 less $1,249.70) were deposited by petitioner in his own personal bank account. On April 1, 1968, Hydaran executed a deed transferring its remaining property, including the remaining portion of Tracts 1048 41 and 42, Tracts 7, 10 and 9 and Tract 12 [8] to petitioner, subject to all outstanding mortgages, restrictions, limitations, easements and taxes. Hydaran continued its legal existence until May 13, 1969, at which time it was dissolved by proclamation of the Governor for nonpayment of capital stock taxes. By quitclaim deed dated June 2, 1969, Hydaran conveyed Tract 9 to the Department of Water and Sewers of the City of Hialeah, Florida. The above noted transactions as well as additional deposits to and withdrawals from Hydran's bank account may be illustrated by the following summation: Documents Executed
1.
Purchase money mortgage dated February 6, 1963
2.
Mortgage deed dated May 8, 1963
3.
Warranty deed dated May 24, 1963
4.
Mortgage deed dated August 22, 1963
5.
Mortgage deed dated February 18, 1964
6.
Partial release of mortgage dated February 18, 1964
7.
Partial release of mortgage dated February 28, 1964
8.
Opinion on title dated May 23, 1964
9.
Warranty deed dated May 27, 1964
10.
Mortgage deed dated March 29, 1965
11.
Deposit receipt dated August 9, 1966
12.
Closing statement dated September 1, 1966
13.
Warranty deed dated September 9, 1966
14.
Warranty deed dated April 1, 1968
15.
Satisfaction of Mortgage No. 1
16.
Satisfaction of Mortgage No. 2
17.
Quit-Claim deed dated June 2, 1969
*60 Deposits to Hydaran Account
Item
Amount of (If determined)
1.
5/16/63
$ 3,915.99
Proceeds obtained by discounting note
payable to the corporation. Note was
dated February 6, 1963 and was in the
amount of $4,500. The note was secured
by the purchase money mortgage of
Nathan and Luba Friedman.
2.
7/3/63
$ 9.01
3.
8/23/63
1,950.00
Funds obtained by the corporation by
executing a note payable on August 22,
1963 to Betty Hathaway. The note was
in the amount of $2,050 and was secured
by a mortgage.
4.
9/4/63
135.00
5.
2/28/64
1,125.00)
Funds obtained by the corporation by
)
executing a note payable on February 18,
6.
3/11/64
11,268.01)
1964 to Isaac Rousso. The note was in
the amount of $12,500 and was secured
by a mortgage.
7.
6/8/64
18,000.00
Funds obtained by sale to Universal
Aircraft Parts, Inc. as set forth in
Warranty Deed dated May 27, 1964.
8.
6/10/64
100.00
Bank Adjustment - Returned Item
9.
6/25/64
100.00
10.
5/23/66 7,500.00
Deposit Ticket identified source
as I. Rousso.
Total $44,103.01 1049 *61 Checks Drawn on Hydaran Account
Item
Payee of Check
Disposition of Funds
No.
(If determined)
Date
Amount
(If determined)
1.
Hylan H. Kout
5/16/63
$ 1,500.00
Check endorsed for deposit
only to Hylan H. Kout -
Trust Account
2.
5/20/63
2,000.00
3.
Cash
6/7/63
225.00
Check endorsed and cashed
by Hylan H. Kout
4.
Cash
6/29/63
200.00
Check endorsed and cashed
by Hylan H. Kout
5.
Hylan H. Kout
8/23/63
$ 100.00
Check endorsed and cashed
by Hylan H. Kout
6.
Cash
8/23/63
100.00
Check endorsed for deposit
to Hylan H. Kout - Trust
Account
7.
Debit Memo
8/26/63
9.01
8.
Murray A. Shaw
8/23/63
337.50
Check endorsed by Mr. Shaw -
writing on back of check
indicates this is an
interest payment
9.
Hylan H. Kout
8/28/63
1,100.00
Check endorsed and cashed
by Hylan Kout
10.
Hylan H. Kout
8/28/63
200.00
Endorsed and cashed by
Hylan Kout
11.
8/26/63
50.00
12.
8/29/63
25.00
13.
10/1/63
100.00
14.
10/1/63
48.31
15.
10/8/63
10.00
16.
11/6/63
5.00
17.
3/12/64
4,500.00
On the bank microfilm
the front of this check
is covered by another
check - the back of the
check disclosed an
endorsement by Hylan H.
Kout to his trust account
18.
Hylan H. Kout
3/16/64
2,500.00
Check endorsed for deposit
by Hylan H. Kout
19.
Murray A. Shaw
3/18/64
5,000.00
20.
American Tel &
3/24/64
$ 300.00
For 3 Shares for Sherry
Tel Co.
Estok
21.
5/1/64
90.00
22.
Isaac Rousso
6/8/64
6,532.00
To purchase cashier's
check in the amount of
$6,532.00 payable to
Isaac Rousso on mortgage
and interest. Mortgage
recorded in Official
Records Book 4026, page 69
Pymt on mtg. note $6,250
Pymt on interest 282
Total $6,532
Principal still due on
mortgage as of June 8,
1964 is $6,250
23.
Irving Friedman
6/8/64
9,300.00
and Sandra
Friedman
24.
Cash
6/9/64
900.00
Cashed by Hylan H. Kout
25.
Hylan H. Kout
6/9/64
700.00
Cashed by Hylan H. Kout
26.
Hylan H. Kout
6/8/64
100.00
Deposited to Hylan H.
Kout - Trust Account
27.
Hylan H. Kout
6/17/64
50.00
Cashed by Hylan H. Kout
28.
Cash
6/19/64
300.00
Cashed by Hylan H. Kout
29.
Cash
6/22/64
100.00
Cashed by Hylan H. Kout
30.
Hylan H. Kout
6/23/64
121.00
Cashed by Hylan H. Kout
31.
Hylan H. Kout
6/24/64
90.00
Cashed by Hylan H. Kout
32.
Service Charge
7/23/64
2.00
33.
Hylan H. Kout
5/27/66
7,475.00
Deposited to Hylan H.
k/out-Trust Account
34.
Hylan H. Kout
8/26/66
25.00
Cashed by Hylan H. Kout
35.
Bank Charges 8.19
from 9/30/66 to
7/1/67
Total $44,103.01
*62 1051 Hydaran did not file any corporate income tax returns and it kept no formal books or records during its lifetime. With the exception of the initial incorporation meeting, there were no meetings of the stockholders, board of directors or officers. From the time of Hydaran's incorporation in 1962 petitioner with few exceptions paid the interest on the mortgages and taxes owing on the property held by the corporation. He deducted such expenditures on his personal income tax return. In this regard petitioner made the following payments during 1965 and 1966: Year
Interest
Taxes
1965
$1,889.92
$1,334.10
1966
3,098.32
2,412.42
From July 23, 1964 through May 22, 1966, the record fails to reflect any activity in the corporate bank account. Its balance as of the latter date was $8.19. On May 23, 1966 the Hydaran bank account registered a deposit of $7,500. Such amount reflected a loan obtained, with the assistance of petitioner, from Rousso. Petitioner on May 27, 1966, withdrew $7,475 from the corporate bank account and in turn deposited it in his own account. Shortly thereafter, on August 26 of the same year, he withdrew an additional $25 thereby *63 once again reducing the corporate account balance to $8.19. This amount was finally wiped out by bank service charges on July 1, 1967. Petitioner on his 1966 Federal income tax return reported the sale by Hydaran of Tract 34 on September 9, 1966, to Somers as disposition by petitioner of a capital asset. The return reflects the following Sale price
$14,250.00
Cost basis 3,749.00
Gain realized
10,501.00
Sec. 1202 deduction 5,250.50
Long term capital gain
$ 5,250.50
The statutory notice of deficiency states in part: (a) It is determined that the distribution to you of $7,500.00 by Hydaran Corporation represented a taxable dividend to the extent of current earnings and profits, computed as follows: Sales of Land
$14,250.00
Less: Cost of Land
$2,500.00
Commissions and Expenses
1,249.70
Taxes
3,001.84
Interest 2,876.04
9,627.58
Hydaran Corp. Earnings and Profits for 1966
[9] $ 4,622.42 Accordingly, income is increased for *64 the taxable year 1966 by $4,522.42 shown as follows: Dividend Income
Hydaran Corporation
$4,622.42
Less: Exclusion 100.00
Increase to Income $4,522.42
(c) It is determined that vacant land sold during 1966 and reported on your individual income tax return was actually owned by the Hydaran Corporation. Therefore, your income is decreased for 1966 by the $5,250.50 long-term capital gain reported on the sale of the land. (d) It is held that payments for interest in the amounts of $1,889.92 and $3,098.32 are not deductible by you in the taxable years ended December 31, 1965 and 1966, respectively, under section 162 of the Internal Revenue Code since the expenses were not your expenses but were those of the Hydaran Corporation. See additionally section 482 of the Internal Revenue Code of 1954. (e) It is held that payments for real estate taxes in the amounts of $1,334.10 and $2,412.42 are not deductible by you in the taxable years ended December 31, 1965 and 1966, respectively, under section 163 of the Internal Revenue Code since the expenses were not your expenses but were those of the Hydaran *65 Corporation. See additionally section 482 of the Internal Revenue Code of 1954. Opinion The issue presented for determination is whether Hydaran was a viable corporation for Federal income tax purposes. This decision will lead us to a conclusion relating to: (a) Whether corporate distributions made during 1966 are taxable to petitioner as a dividend; and 1052 (b) whether petitioner is entitled to deduct interest and property tax payments made with respect to property titled in the name of Hydaran. Petitioner asserts that Hydaran was a mere corporate shell and therefore we should disregard the entity and treat petitioner as the true owner of the property, thereby permitting him to deduct the interest and property tax payments and report the sale of the property directly rather than as a corporate distribution. Respondent, on the other hand, contends that Hydaran was a viable corporation engaged in business activities and must be so treated in determining the tax consequences in issue. We agree with respondent. We take as our touchstone the decision of the Supreme Court in Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-39 (1942), *66 wherein it noted: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. [Emphasis supplied; footnotes omitted] See Taylor v. Commissioner, 445 F. 2d 455 (C.A. 1, 1971); Britt v. United States, 431 F. 2d 227 (C.A. 5, 1970); Tomlinson v. Miles, 316 F. 2d 710 (C.A. 5, 1963). See also William B. Howell, 57 T.C. 546 (1972). Those cases wherein an entity has been ignored have for the most part been limited to situations involving tax avoidance or where the corporate structure performs no function but the holding of title to property. Gregory v. Helvering, 293 U.S. 465 (1935); Kimbrell v. Commissioner, 371 F. 2d 897 (C.A. 5, 1967). We think it clear that Hydaran did more than merely hold title to property owned *67 by petitioner. From the time of its creation Hydaran was an active corporation. It opened a bank account, sold several pieces of real estate, executed numerous mortgages, refinanced outstanding loans and borrowed money. In short, Hydaran complied with the business requirement of Moline. Britt v. United States, supra; Tomlinson v. Miles, supra; Carver v. United States, 412 F. 2d 233 (Ct. Cl. 1969). It is true that petitioner did on occasion ignore the corporate structure by depositing corporate funds directly in his account and paying corporate obligations from his personal funds. However this does not alter the validity of the corporation but rather merely demonstrates a shareholder's obvious dominance over a wholly owned corporation. As the Supreme Court noted in National Carbide Corp. v. Commissioner, 336 U.S. 422, 431-32 (1949): [When] a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise. We therefore conclude that Hydaran was a viable corporation for Federal income tax purposes. *68 Having determined the validity of Hydaran, the status of the distributions and deductions become apparent. The corporation distributed a total of $20,500.30 to petitioner during 1966. [10] Its current earnings and profits for the year ended December 31, 1966 totaled $4,622.42. Therefore, complying with the provisions of sections 301 and 316, petitioner is deemed to have received dividend income to the extent of $4,622.42. As to the deductions claimed by petitioner for interest and property taxes, the rule is well established that a shareholder is not entitled to a deduction for the payment of expenses attributable to the corporation; such amounts constitute a loan or a contribution to *69 capital. Deputy v. Du Pont, 308 U.S. 488 (1940); Jean U. Koree, 40 T.C. 961 (1963); Ernest L. Rink, supra. It is therefore manifest that petitioner's claimed deductions must be disallowed. Decision will be entered for the respondent. 1053 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. The facts are barren with regard to the effect of this sale on the February 13, 1962 mortgage executed on Tracts 7, 8, 10 and 9. That is, whether Nathan assumed a portion of this mortgage or whether Hydaran was required to include additional property to cover the loss of security caused by the sale of Tract 8.↩
3. The record is void of any information with regard to the $2,050 mortgage.↩
4. The facts are unclear as to why petitioner in satisfaction of this obligation made payment to Strong rather than Hathaway, the original creditor and mortgagee.↩
5. The mortgage deed indicates that it represents a first mortgage on the property. It is therefore apparent that the February 26, 1962 mortgage executed on this property was satisfied prior to the execution of the present mortgage. Since no payment on this earlier mortgage can be discovered in Hydaran's account, it must be assumed petitioner made payment from his own account. ↩
6. Hydaran made a total payment of $6,532. Two hundred and eighty-two dollars of that sum apparently represented interest.↩
7. The mortgage deed indicates that it represents a first mortgage on the property. Further, analysis of the corporate bank account fails to reflect a deposit which could have stemmed from this loan. Therefore, it may well be that the funds acquired from Rousso were used to satisfy the loan initiated on February 13, 1962 and secured by the mortgage executed on the same day.↩
8. We cannot determine from the record why Tract 22 was also not reconveyed to petitioner; the facts do not demonstrate a prior disposition.↩
9. Respondent concedes that Hydaran had a deficit in its accumulated earnings and profits account. It therefore asserts dividend treatment only to the extent of current earnings and profits.↩
10. This figure consists of the net sale proceeds of $13,000.30 deposited in petitioner's account and the $7,500 withdrawn by petitioner from the corporate bank account. Respondent, in the notice of deficiency, limited the corporate distributions to a figure of $7,500 which represented the May 27 and August 26, 1966 withdrawals. He however excluded the net sale proceeds which were deposited directly in petitioner's bank account. We find this exclusion to be both inconsistent and incorrect.↩