John R. COLLINS, III, et al.,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 3107 to 3113.

United States District Court,
S. D. Georgia,
Savannah Division.

Dec. 12, 1974.

Erwin A. Friedman (Friedman, Haslam & Weiner), Savannah, Ga., for plaintiffs.

John F. Murray, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

These consolidated actions are brought, pursuant to 28 U.S.C. § 1346(a), to recover federal income taxes paid by plaintiffs as individuals in 1967 and 1968. Both sides move for summary judgment. The motions are based on a stipulation by the parties and depositions.

In 1965 the plaintiffs purchased unimproved property as tenants-in-common for development of an apartment complex. They obtained a loan commitment for permanent financing. However, it developed that temporary financing for construction purposes was not available to the investors as borrowers. Under Georgia law, the lowest interest rate obtainable was usurious in the case of in-

dividuals. On the other hand, lenders are authorized to charge an agreed interest rate in the instance of corporations. Ga.Code Ann. § 57–118.

Under these circumstances, a corporation was formed in 1966 by the tenants-in-common.[1] The permanent loan commitment was changed to run to Bencap, Inc. instead of to the individual participants in the venture. The tenants-in-common thereupon executed a warranty deed conveying the property to the corporation. A construction loan of $655,000 was made to Bencap, Inc. by the Citizens and Southern National Bank. It was secured by a security deed from the corporation and also by the guaranty of the tenants-in-common as individuals.

The apartment project was completed by the general contractor and units were rented beginning in May, 1967. The leases were made in the name of Bencap, Inc. through a real estate agency. They were assigned to the Bank as further security.

The construction loan was paid off in the Fall of 1967 and the permanent loan closed. In November of that year Bencap, Inc. was dissolved following the conveyance by it of the apartment complex to the individual investors as tenants-in-common in the respective percentages of each as set forth in an agreement entered into between them in October, 1967.

During the period of the construction of the apartment complex the corporation became entitled to depreciation and interest deductions for federal income tax purposes. Bencap, Inc. filed no tax returns. The tenants-in-common claimed such deductions in their individual tax returns for 1967 and 1968. The Commissioner of Internal Revenue disagreed. Tax deficiencies were asserted against the investors and the taxes paid. This litigation for refunds ensued.

The above outline of the salient facts in the case frames the central legal question which may be put thusly:

Was Bencap, Inc. a separate taxable entity, within the meaning of the Internal Revenue laws, fulfilling a useful business purpose that was either the equivalent of business activity or was followed by the carrying on of business by such corporation?

As stated in Moline Properties v. Commissioner of Internal Revenue, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499:

> "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or *to serve the creator's personal or undisclosed convenience*, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." (emphasis added).

With much industry, counsel have analyzed, analogized and distinguished the facts and the rulings in the cases dealing with the issue before this Court.[2] I content myself with a brief review of the legal principles appertaining to the matter of respect or disregard given the corporate form or device in income tax cases.

■ The stockholders of a closely held corporation cannot demand, if it was created or acts for some business end, that its existence be ignored for federal income tax purposes. Individuals cannot adopt the corporate form for whatever benefits it may offer and ignore the tax consequences. Harrison Property, Management Co., Inc. v. United States, 475 F.2d 623, 626, 201 Ct.Cl. 77.

---

1. The powers of Bencap, Inc. included the purchase or acquisition of lands or contracts for the purchase of lands, for the purpose of investment, development or sale and the power to mortgage the company property.

2. "[I]t is highly unlikely that in any two situations the activities and conduct in the name of the corporation will be the same. . . ." Tomlinson v. Miles, 316 F.2d 710, 714 (5th Cir.).

Plaintiffs contend that at all times during the existence of Bencap, Inc. everyone who dealt with the corporation was fully aware that it was a sham and that they were dealing with the individual tenants-in-common.

"That a corporation is regarded as a 'straw', a 'dummy', a 'phantom', in itself proves nothing. The concept of the corporation is itself a fiction. A corporation is an artificial person. It operates under a charter granted it by the state, conferring certain rights, and also conferring certain privileges and exemptions in return for complying with certain rules or conditions. *The decision to recognize or not to recognize the tax identity of a corporation depends upon what the corporation does, not what it is called, how many or how few own it, or how they regard it.* [Emphasis added]. Love v. United States, 96 F.Supp. 919, 922, 119 Ct.Cl. 384.

██ There are instances when the corporate entity may be disregarded to prevent unfair tax avoidance, but only when the corporation performs no function other than the holding of title to real estate. See Taylor v. Commissioner of Internal Revenue, 445 F.2d 455, 457 (1st Cir.). The retention of beneficial ownership by the stockholders of the corporation and the control of policies and the making of daily decisions by owners acting individually and not in any corporate capacity, do not require that the corporate existence be ignored. Harrison Property Management Co., Inc. v. United States, *supra*, 475 F.2d at 626.

██ The plaintiffs adumbrate all factors connected with the corporate participation in the apartment project. They emphasize the agreement of September 19, 1966, between the cotenants stating that the corporation was not to have any powers or carry on any activities except as required by the lender bank; that Bencap, Inc. was to hold title to the property merely as trustee; was to take no action whatsoever other than that affirmatively directed by the co-tenants, and that the Board of Directors was to possess no authority except as required by law or by the lender. The contract between the co-tenants and the general contractor was not assumed by the corporation.

After Bencap, Inc. was chartered, it executed an agreement with the co-tenants acknowledging the limited purpose of its corporate existence and the obligation to reconvey legal title as soon as possible consistent with the requirements of the Citizens and Southern National Bank. On the following day, November 8, 1966, the co-tenants executed another agreement disavowing the intention of creating any organization or association among themselves and reiterating that the legal title to the property had been placed in the name of Bencap, Inc. merely because the lending institution required them to do so.

Plaintiffs say that no business activity was conducted by the corporation.[3] In fact, no stock was issued; no organizational or other meeting of the stockholders held, and no directors ever elected. It is true, plaintiffs add, that certain documents were signed by certain of the tenants-in-common as officers or directors of Bencap, Inc. but they did not *legally* occupy the positions in question.

Obviously, plaintiffs were keenly aware of the prospective advantages to them as individuals in the matter of depreciation and interest for tax purposes and anxious to preserve them. Faced with the fact that Georgia law did not permit the lending institution to charge the rate of interest it was accustomed to collect in construction loans, the tenants-in-common were forced to resort to the corporate form in order legally to pay the higher interest rate required. To preserve their tax deductions as individuals, the corporate phase of the venture was restricted to the barest mini-

---

3. It did have a bank checking account in its name for the purpose of paying various expenses connected with the construction of the apartments.

mum—the temporary borrowing and mortgaging in the name of a corporation. Bencap, Inc. was allowed to exist as little more than a name.

The fact remains, however, that the corporation did exist and did perform the function intended of it until the permanent loan was consummated. It was more than a business convenience, it was a business necessity to plaintiffs' enterprise. As such, it came into being. As such, it served the purpose of its creation.

I do not perceive how plaintiffs can maintain that Bencap, Inc. was only a fictive creature (a dummy or straw corporation) to be ignored when it came to the tax advantages of the individuals arising out of a business venture that would not have fructified without the use of the corporate device in connection with the temporary financing of the project. A taxpayer cannot shop on both sides of the street at the same time. He cannot avail himself of the business advantages of the corporate form while disregarding it in the case of its tax disadvantages. "[T]he choice of the advantages of incorporation to do business requires 'the acceptance of the tax disadvantages'." Harrison Property Management Co., Inc. v. United States, *supra*, 475 F.2d at 626.

Plaintiffs also contend that the corporation was merely their agent or trustee in the role performed by it and that, so regarded, they can claim the interest and depreciation deductions to which Bencap, Inc. nominally was entitled. "If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent." National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 437, 69 S.Ct. 726, 734, 93 L.Ed. 779.

The record in the present case raises no factual question in respect to the agency theory. Nor does it admit of any other conclusion than that the facts fail to meet the test of *National Carbide* and other cases dealing with the trustee—agency contention. See Greer v. Commissioner of Internal Revenue, 334 F.2d 20 (5th Cir.); Given v. Commissioner of Internal Revenue, 238 F.2d 579 (8th Cir.); Harrison Property Management Co., Inc. v. United States, *supra,* 475 F.2d 623, 627. *Cf.* United States v. Brager Building & Land Corp., 124 F.2d 349 (4th Cir.).[4]

There is no genuine issue of fact. Apparently that is conceded by the parties. The issue is solely one of law and this Court is persuaded as to the merits of the Government's side of the case. Accordingly, defendant's motion for summary judgment is granted and plaintiffs' is denied.

---

4. This case was decided before *National Carbide*.