DANIEL E. ROGERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rogers v. Commissioner
Docket No. 1675-74.
United States Tax Court
T.C. Memo 1975-289; 1975 Tax Ct. Memo LEXIS 85; 34 T.C.M. (CCH) 1254; T.C.M. (RIA) 750289; September 17, 1975, Filed David L. Rapp, for the petitioner. Leo J. Stevenson, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Taxable Year
Deficiency
1971
$1,024.77
1972
891.78 The sole issue remaining for decision is whether petitioner individually is entitled to claim a deduction for interest paid on loans obtained by petitioner's wholly-owned corporation, Armadillo Investment Company. The case was submitted as fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts filed by the parties, together with accompanying exhibits, are incorporated herein by reference. Petitioner is an individual who resided in Creve Coeur, Missouri, at the time of filing *86 the petition in this case. Petitioner filed individual Federal income tax returns for the calendar years 1971 and 1972 with the District Director of Internal Revenue, Kansas City, Missouri. During the years in issue petitioner was a shareholder in Seven Finders Investment Company (hereinafter "Seven Finders"). The shareholders and percentages of ownership in Seven Finders were originally as follows: Shareholder
Percent of Ownership
Richard B. Dempsey
4%
David G. Dempsey
4%
Ronald D. Gulley
16-1/2%
Richard E. Stoughton
16-1/2%
Robert H. Ehrmann
10%
Daniel E. Rogers
38%
Allen H. Zerman
11%
100% Subsequently Daniel E. Rogers made the following purchases of stock from the other shareholders: December 10, 1970
Purchased all shares of
Allen H. Zerman
December 11, 1970
Purchased all shares of
Richard B. Dempsey
October 29, 1971
Purchased all shares of
Ronald D. Gulley, Richard E.
Stoughton, and Robert H.
Ehrmann
June 22, 1973
Purchased all shares of
David G. Dempsey Thus, as of June 22, 1973, petitioner owned all the stock of Seven Finders. In November of 1970 petitioner wished to obtain a loan to help finance *87 the purchase of an operating farm by Seven Finders. At that time the maximum legal rate of interest chargeable under Missouri law was 8 percent; a rate of interest in excess of 8 percent would have been usurious. Mo. Ann. Stat. sec. 408.030 (Vernon 1969). As the prevailing interest rates were in excess of 8 percent, lending institutions were unwilling to loan money to the petitioner as an individual. However, a corporation was prohibited by statute from asserting the defense of usury. Mo. Ann. Stat. sec. 408.060 (Vernon 1969). Therefore, these institutions were willing to loan money to a corporate borrower. On November 5, 1970, Armadillo Investment Company (hereinafter "Armadillo") was incorporated by petitioner under the laws of the State of Missouri. Armadillo was formed for the purpose of obtaining a loan at an interest rate in excess of 8 percent. [1] Petitioner was at all times the sole shareholder and president of Armadillo. He alone was authorized to obtain loans and withdraw funds of Armadillo on deposit with Normandy Bank. Other officers of the corporation were Richard B. Dempsey, vice president, Allen H. Zerman, secretary, *88 and David G. Dempsey, treasurer. *89 On November 6, 1970, Armadillo obtained a loan in the amount of $157,000 from Normandy Bank, Normandy, Missouri; said loan was evidenced by a 6-month note. The interest rate on the loan was to fluctuate; the formula for determining the interest rate was the prime interest rate plus one and one-half percent, to be figured on a daily basis. Petitioner was guarantor of the loan made to Armadillo. Additionally, on November 6, 1970, petitioner authorized Armadillo to pledge certain of his (petitioner's) securities as security for the loan from Normandy Bank. Also on November 6, 1970, Normandy Bank issued a check, payable to Armadillo Investment Company, in the amount of $157,000. This check was endorsed "Pay to the Order of Guaranty Land Title Co., Armadillo Investment Co. by Daniel E. Rogers, President," and was delivered to the Guaranty Land Title Company as partial payment for the purchase of an operating farm by Seven Finders. Title to the farm was taken in the name of Seven Finders Investment Company. On the same date Seven Finders executed a 10-year promissory note in the amount of $157,000, with interest payable semiannually at the rate of 10 percent per annum, in favor of Daniel *90 E. Rogers. Seven Finders also executed a deed of trust in favor of Daniel E. Rogers, to secure the above-mentioned note. On March 11, 1971, Armadillo obtained a loan of $157,000 at St. Louis County National Bank, giving a note No. 195,664 for $157,000 to evidence this indebtedness. The proceeds of this loan were used to discharge the note at Normandy Bank. On May 6, 1971, note No. 195,664 was cancelled and Armadillo gave a 6-month note, No. 196,473, for $157,000 to St. Louis County National Bank. This note was cancelled on November 8, 1971, and Armadillo gave a new 6-month note, No. 198,893, in the same amount. Armadillo borrowed an additional $30,000 from St. Louis County National Bank on February 21, 1972. On March 7, 1972, Armadillo executed note No. 200,548 in the amount of $30,000 to St. Louis County National Bank, and $30,000 was credited to its checking account. On the same date Armadillo loaned $30,000 to Seven Finders. Seven Finders in return executed a 10-year promissory note to Daniel E. Rogers in the amount of $30,000, with interest payable semiannually at the rate of 10 percent per annum. On May 4, 1972, note No. 198,893 for $157,000 was cancelled and Armadillo *91 gave a new 6-month note, No. 201,429, in the same amount. On the same date note No. 200,548 for $30,000 was cancelled, and that loan increased to $33,000. Armadillo gave a 6-month note, No. 201,428, for $33,000 to St. Louis County National Bank. On October 31, 1972, note No. 201,429 for $157,000 and note No. 201,428 for $33,000 were cancelled, and the loans consolidated and increased to $192,000. Said loan of $192,000 was evidenced by a 6-month note, No. 203,909, for $192,000, executed by borrower Armadillo by Daniel E. Rogers as president. Petitioner as an individual guaranteed this note. Petitioner transmitted the interest due on loans made to Armadillo during 1971 and 1972. He also received the interest payments on the notes from Seven Finders. Petitioner ignored the corporate existence of Armadillo and treated its indebtedness as his indebtedness, and its income as his income. Armadillo filed no corporate income tax returns for 1971 or 1972, but did pay Missouri franchise taxes. Armadillo also filed various statements and reports with the State of Missouri, and maintained and used bank accounts. The corporation did not engage in any other activity. Petitioner in his individual *92 income tax returns for 1971 and 1972 treated as his income the interest paid by Seven Finders, and treated as his interest expense the interest paid on the loans made to Armadillo by Normandy Bank and St. Louis County National Bank, the amounts of which are as follows: 1971
1972
Interest Income
$ 6,091.30
$ 2,732.00
Interest Expense
10,516.78
11,911.02 In his notice of deficiency the Commissioner disallowed the interest expense deduction. Respondent contends that Armadillo should be recognized as a separate taxable entity, and that Armadillo, and not petitioner individually, is entitled to the deduction for interest paid on the loans obtained by it. Petitioner asserts that Armadillo is a mere "dummy" corporation whose existence should be ignored for tax purposes. Alternatively, petitioner argues that Armadillo was merely an agent of petitioner. The parties have stipulated that if petitioner is held entitled to a deduction on his individual Federal income tax returns for the interest paid to the banks on the loans obtained by Armadillo, then the interest paid by Seven Finders on its obligation is taxable income to petitioner and not Armadillo. However, *93 if Armadillo is found to be entitled to the deduction for interest paid to the banks on the loans obtained in its name, then the interest paid by Seven Finders is not taxable income to petitioner but is taxable income to Armadillo. Thus, we must determine whether the corporate existence of Armadillo should be recognized. As a general rule, a corporate entity will not be ignored, except in unusual circumstances. Britt v. United States,431 F. 2d 227, 233 (5th Cir. 1970); Dodd v. Commissioner,298 F. 2d 570, 577-578 (4th Cir. 1962); O'Neill v. Commissioner,271 F. 2d 44, 49 (9th Cir. 1959), affg. a Memorandum Opinion of this Court; Paymer v. Commissioner,150 F. 2d 334, 336 (2d Cir. 1945), affg. and revg. in part and remanding a Memorandum Opinion of this Court; Collins v. United States,386 F. Supp. 17, 19 (S.D. Ga. 1974), affd. 514 F. 2d 1282 (5th Cir. 1975); Langdon L. Skarda,27 T.C. 137, 145 (1956), affd. 250 F. 2d 429 (10th Cir. 1957). The principal exceptions in tax cases are when the corporation is a sham (as petitioner asserts in this case), and *94 when the corporation has been created for purposes of tax avoidance. Britt v. United States,supra.
This doctrine was enunciated in the leading case of Moline Properties v. Commissioner,319 U.S. 436, 438-439 (1943), in which the Supreme Court prescribed the following criteria for recognition or nonrecognition of a corporate entity: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [Fn. ref. omitted.] In applying the Moline test, courts have looked most frequently to the language following the disjunctive "or," i.e., the business activity of the corporation. Little emphasis has been placed on business purpose. Courts have recognized, however, that Moline establishes a two-pronged test, the first part of which is business *95 purpose, and the second, business activity. Elot H. r/affety Farms, Inc. v. United States,511 F. 2d 1234, 1238 (8th Cir. 1975), petition for cert. filed June 12, 1975; O'Neill v. Commissioner,supra;Jackson v. Commissioner,233 F. 2d 289, 290 (2d Cir. 1956); Harrison Property Management Co., Inc. v. United States,475 F. 2d 623, 626 (Ct. Cl. 1973); Collins v. United States,supra.Business purpose or business activity are alternative requirements. Carver v. United States,412 F. 2d 233, 236 (Ct. Cl. 1969); Tomlinson v. Miles,316 F. 2d 710, 714 (5th Cir. 1963). This Court has previously held that the avoidance of restrictions under state law constitutes a valid business purpose requiring recognition of the corporate entity. David F. Bolger,59 T.C. 760, 766 (1973). In another case recently affirmed by the Fifth Circuit, where the taxpayers had incorporated to avoid state usury laws, the Court stated: I do not perceive how plaintiffs can maintain that Bencap, Inc. was only a fictive creature (a dummy or straw corporation) to be ignored *96 when it came to the tax advantages of the individuals arising out of a business venture that would not have fructified without the use of the corporate device in connection with the temporary financing of the project. * * * [Collins v. United States,386 F. Supp. 17, 21 (S.D. Ga. 1974), affd. 514 F. 2d 1282 (5th Cir. 1975).] Armadillo was formed for the purpose of obtaining a loan at an interest rate in excess of 8 percent; due to the restrictions of state law, petitioner could not individually obtain the loan. Armadillo reloaned the money to Seven Finders, a corporation in which petitioner was majority stockholder. The proceeds were used as partial payment for the purchase of an operating farm by Seven Finders, a venture which apparently would not have materialized without these financing arrangements. Thus, Armadillo served a valid business purpose; indeed, its creation was a business necessity. As this purpose satisfies one of the alternative requirements of Moline, we think Armadillo must be recognized as a separate taxable entity. Additionally, Armadillo carried on certain business activities. While each case must be decided in light of *97 its particular facts, the quantum of activity required for recognition under the second part of the test enunciated in Moline may be minimal. Britt v. United States,supra at 237; Paymer v. Commissioner,supra at 337; Collins v. United States,supra at 20-21. In the instant case Armadillo obtained and renegotiated loans, loaned money to Seven Finders, maintained and used bank accounts, paid state franchise taxes, and filed various statements and reports which were required of it to maintain its corporate existence under the laws of the State of Missouri. Although the corporation had no office (other than that of its registered agent, as required by state law), had no salaried officers or employees, and maintained no books or records, these factors are not determinative. Paymer v. Commissioner,150 F. 2d 334, 336 (2d Cir. 1945); Langdon L. Skarda,27 T.C. 137, 144-145 (1956). Petitioner asserts that in order for the corporation to be recognized as a separate taxable entity, its business activity must be coupled with ownership of some property; thus petitioner seeks to distinguish *98 his situation from those cases which hold that only minimal business activity is necessary to fulfill the Moline test. A similar argument has previously been rejected by the Fifth Circuit: The taxpayers take the position that the mere carrying on of business by the corporation, to satisfy this requirement of the Moline Properties case, must be business relating to property to which it has title, either legal or equitable. * * * We find no such limitation in the formula adopted by the Supreme Court in the Moline Properties case. * * * [Tomlinson v. Miles316 F. 2d 710, 714 (5th Cir. 1963).] We too cannot find in the Moline case or in subsequent decisions any basis for the assertion that ownership of property is necessary or determinative; we are therefore in agreement with the Fifth Circuit. Petitioner relies upon the decision of the Second Circuit in Paymer v. Commissioner,150 F. 2d 334 (2d Cir. 1945), to support his contention that Armadillo is but a sham whose existence is to be ignored for tax purposes. In that case two corporations, Westrich and Raymep, were formed; certain property was conveyed to each corporation, with the express *99 understanding in each case that the corporation was to hold only bare legal title to the property. Nothing was done by Westrich with respect to the property held in its name. The Court found Westrich to be merely a "passive dummy," as it served no business purpose with respect to the property and was intended only as a blind to deter creditors. Although Raymep also was organized solely to deter creditors, it subsequently obtained a loan of $50,000, assigning its interest in the property held by it as partial security for the loan. The Court found that this constituted sufficient business activity to require recognition of Raymep as a taxable entity. 150 F. 2d 336-337. Petitioner likens his situation to that of Westrich. We believe his situation is more similar to that of Raymep, and that his reliance upon the Paymer case is misplaced. Armadillo was created for a valid business purpose, one which could not have been achieved without the use of the corporate form. Its business activities, while admittedly minimal, were sufficient to enable it to carry out the purpose for which it was created. We believe that in these circumstances the activities were sufficient to *100 require recognition under the second part of the Moline test. Petitioner, having chosen the advantages of doing business in corporate form, must accept the attendant tax disadvantages. Harrison Property Management Co., Inc. v. United States,475 F. 2d 623, 626 (Ct. Cl. 1973); Collins v. United States,386 F. Supp. 17, 19 (S.D. Ga. 1974), affd. 514 F. 2d 1282 (5th Cir. 1975); Ernest H. Weigman,47 T.C. 596, 606 (1967), affd. 400 F. 2d 584 (9th Cir. 1968). Finally, petitioner argues that Armadillo in its business dealings acted as petitioner's agent, and as such was a mere conduit whose existence should be ignored for tax purposes. The Supreme Court in Moline in discussing a similar argument stated that "the mere fact of the existence of a corporation with one or several stockholders, regardless of the corporation's business activities, does not make the corporation the agent of its stockholders." 319 U.S. at 440. The Supreme Court reiterated its position a few years later in National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). In that case the Court held that *101 ownership of the corporation and control of its day-to-day activities were no longer determinative; if the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal. 336 U.S. at 437. Petitioner cites Stewart Forshay,20 B.T.A. 537 (1930), and Moro Realty Holding Corporation,25 B.T.A. 1135 (1932), affd. 65 F. 2d 1013 (2d Cir. 1933), in support of his agency argument. Both cases predate Moline and are cited in Moline as representative of one side of the conflict among the lower courts which led to Supreme Court consideration. In order to prevail under the test of Moline and National Carbide, petitioner must show the existence of the usual incidents of an agency relationship. Petitioner has failed to meet this burden of proof. Decision will be entered for the respondent.
Footnotes
1. The original Articles of Incorporation provided in Article Eight: The purposes for which the corporation is formed and the business to be carried on and the objectives to be effected by it are: To carry on a general real estate investment business; to purchase, lease, exchange, or otherwise acquire real estate and property, either improved or unimproved, and any interest therein; to own, hold, control, maintain, manage, and develop the same; to erect, construct, maintain, improve, rebuild, enlarge, alter, manage, operate and control all kinds of buildings, and all structures and erections of any description and type on any lands, owned, held, leased or managed by the Corporation or upon any other lands. Under Article Nine the corporation was given broad powers to effectuate these purposes. On September 17, 1973, the Articles of Incorporation were amended. Article Eight as amended provides: "The corporation is formed for the business purpose of obtaining a loan for the benefit of Daniel E. Rogers." Article Nine was deleted in its entirety. Presumably the articles as amended, rather than as originally adopted, reflect the true purpose of the corporation. In any event, the parties have stipulated that the corporation was formed for the purpose of obtaining a loan, and we adhere to that stipulation.↩