John D. CROUCH, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 81–1196.

United States Court of Appeals, Tenth Circuit.

Oct. 25, 1982.

Charles W. German of Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff-appellant.

Michael L. Paup, Washington, D.C. (John F. Murray, Acting Asst. Atty. Gen., Richard W. Perkins and John A. Dudeck, Jr., Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel, James P. Buchele, U.S. Atty., Topeka, Kan., with him on the brief), for defendant-appellee.

Before DOYLE and LOGAN, Circuit Judges, and BOHANON,* District Judge.

LOGAN, Circuit Judge.

John D. Crouch appeals from the district court's judgment denying his claim for a refund of taxes paid to the United States. 509 F.Supp. 727. The issues on appeal are whether the trial court correctly held (1) the taxpayer is not entitled to an interest expense deduction for amounts he paid on a loan made to his wholly owned corporation, and (2) the corporation's election to be taxed as a small business corporation under Subchapter S terminated in 1970 because

rents received were passive investment income within the meaning of I.R.C. § 1372(e)(5).

This case was submitted to the district court on cross motions for summary judgment accompanied by a stipulation of facts and affidavits that are essentially undisputed. Crouch decided to build a luxury apartment complex in Florida. He acquired real estate and obtained construction financing commitments addressed to "corporation to be formed c/o John D. Crouch." Ownership of the land and apartment complex was taken by Seventeen Ventures, Inc., of which Crouch is sole shareholder and president. The corporate form was used to avoid the interest limitations on loans to individuals imposed by state usury statutes. Crouch executed a personal guaranty of payment of the corporation's note, which included a waiver of presentment and agreement that the lender need not pursue any remedies against the corporation before collecting from Crouch.

During 1970 Crouch made payments on the indebtedness of the corporation, including interest in the amount of $34,030, which he claimed as an interest expense deduction on his personal tax return.

In 1969, the corporation elected tax treatment as a small business corporation under Subchapter S, I.R.C. §§ 1371–79, and filed its first tax return on that basis. Its 1970 return was filed as a regular business corporation, not as a Subchapter S corporation. However, Seventeen Ventures never filed an election to terminate its Subchapter S status. In the tax audit that resulted in disallowance of the interest deduction he claimed for 1970, Crouch asserted his right to deduct the net operating loss of the corporation for 1970, on grounds the corporation still had Subchapter S status and the loss passed through to the sole shareholder. When the Internal Revenue Service disagreed, Crouch paid the deficiency assessment and filed a refund claim in which he claimed entitlement to both the disallowed

* Honorable Luther L. Bohanon of the United States District Court for the District of Oklaho-   ma sitting by designation.

interest payment and the $40,906 net operating loss shown on the corporation's tax return.

The district court upheld the Internal Revenue Service's denial of the deduction for interest payments on the ground that the payments were made on the indebtedness of the corporation. It held that the corporation lost its Subchapter S status during 1970 because more than 20% of its gross receipts were passive investment income; thus, the corporation's net operating loss was not deductible on Crouch's personal return. It is from these determinations that Crouch appealed to this Court.

## I

Interest payments are deductible only if made with respect to debts of the taxpayer. Here the named borrower under the contract, mortgage, and mortgage note was Seventeen Ventures, Inc. Crouch's argument that the debt was personal to him is based upon the unconditional loan guaranty and the circumstances surrounding the loan transaction. He contends that the lender knew the corporation could not make the payments and intended that Crouch make those payments personally during 1970. In essence, Crouch is urging the court to disregard both the corporate entity and the form in which the transaction was cast. This the trial court refused to do, and we agree with its conclusion.

Under the Internal Revenue Code, bright-line choices are available to taxpayers with regard to the form in which to operate businesses. Because taxpayers are permitted to select the form in which they do business, with different forms subject to different tax rules, the choice of entity is generally binding. In addressing a taxpayer's argument that the corporate form be ignored the Supreme Court stated:

"The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience,

so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. *New Colonial Co. v. Helvering,* 292 U.S. 435, 442 [54 S.Ct. 788, 791, 78 L.Ed. 1348]; *Deputy v. du Pont,* 308 U.S. 488, 494 [60 S.Ct. 363, 366, 84 L.Ed. 416]. In *Burnet v. Commonwealth Improvement Co.,* 287 U.S. 415 [53 S.Ct. 198, 77 L.Ed. 399] this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages."

*Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943) (footnotes omitted). Courts have consistently interpreted *Moline Properties* to preclude ignoring the corporate form when adoption of that form has served a business purpose. *See, e.g., Lane v. United States,* 535 F.Supp. 397 (S.D.Miss. 1981); *George Sarkisian,* 43 T.C.M. (CCH) 1074 (1982); *Robert M. Modeer,* 43 T.C.M. (CCH) 782 (1982). Incorporation for the sole purpose of avoiding state usury laws has been held to be a business purpose. *William B. Strong,* 66 T.C. 12 (1976), aff'd mem., 553 F.2d 94 (2d Cir. 1977); *accord Collins v. United States,* 386 F.Supp. 17, 21 (S.D.Ga.1974), aff'd per curiam, 514 F.2d 1282 (5th Cir. 1975); *David F. Bolger,* 59 T.C. 760, 766 (1973). Crouch urges that we disregard the form in which the loan transaction was cast to permit him to receive the tax benefit of interest paid. We may not do so. The Supreme Court, in *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974), said:

"This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether con-

templated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not."

*Id.* at 149, 94 S.Ct. at 2137 (citations omitted). *Accord Spector v. Commissioner,* 641 F.2d 376, 381–82 (5th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981). In the instant case, while the principal purpose for using the corporate form was to avoid the strictures of state usury laws, the corporation was not dissolved immediately following the loan transaction, nor did it immediately convey the real estate to the shareholder, as in *Schlosberg v. United States,* 81–1 U.S.T.C. (CCH) ¶ 9272 (E.D.Va.1981). Rather, the corporation continued in existence as a separate legal entity to own and operate the apartment complex. Crouch has received benefits associated with incorporation; he cannot now disown the burdens associated therewith.

As an alternative ground, Crouch asserts that because he is the equitable owner of the corporate assets, Treas.Reg. § 1.163–1(b) permits the interest deduction. The provision relied upon provides:

"(b) Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness."

The government contends that Crouch is not within the scope of the regulation, which it argues was adopted to permit interest deductions by the real estate owner who has given a nonrecourse note on realty, and is not, therefore, personally liable for the indebtedness.

■ Regardless of whether the regulations's application is confined as strictly as the IRS claims, we believe it is inapplicable to the instant case. The concept of equitable title to realty is generally limited to two situations: (1) when legal title to property is held by a trustee, in which case equitable title is said to be in the beneficiary of the trust; and (2) when real estate has been sold under a contract for deed with legal title retained by the seller until the pur-

chase price is totally paid, in which case under the doctrine of equitable conversion the purchaser is said to be the equitable owner during the payoff period. In a sense, one who owns 100% of the stock of a corporation is the equitable owner of corporate assets, but the stock itself has always been treated as personal property, passing under the inheritance rules applicable to personal property and taxed as personal property. We do not think that the concept of equitable ownership set forth in Treas.Reg. § 1.163–1(b) contemplates allowing owners of corporate stock to take interest deductions for payment of the corporation's debt. *Cf. Daniel E. Rogers,* 34 T.C.M. (CCH) 1254 (1975) (sole stockholder of corporation not entitled to deduct interest paid on corporate debt); *Earl E. Cloud,* 33 T.C.M. (CCH) 597 (1974) (same); *Hylan H. Kout,* 31 T.C.M. (CCH) 1044 (1972) (same). The district court's determination that Crouch is not entitled to deduct interest paid on corporate indebtedness is affirmed.

## II

■ The government contends that Crouch is not entitled to take a net operating loss suffered by Seventeen Ventures because the corporation automatically lost its Subchapter S status in 1970 when more than 20% of the corporation's gross receipts were made up of passive investment income. *See* I.R.C. § 1372(e)(5).

Crouch makes two arguments that the rental income does not violate the corporation's Subchapter S status. First, the rental income was not passive investment income because the rent was derived from active business operations. We decline to overrule our decision in *Marshall v. Commissioner,* 510 F.2d 259 (10th Cir. 1975), which held that because interest is explicitly listed in I.R.C. § 1372(e)(5) as passive investment income, a taxpayer in the business of making loans could not qualify for Subchapter S status. Because rents are also listed in I.R.C. § 1372(e)(5), our analysis in *Marshall* requires us to reject the argument that one in the "active business" of renting apartments may elect Subchap-

ter S taxation. *See Winn v. Commissioner,* 595 F.2d 1060 (5th Cir. 1979).

Crouch's second argument is that the corporation rendered significant services in connection with renting the apartments and, therefore, that it met the requirements of Treas.Reg. § 1.1372–4(b)(5)(vi) so payments it received were not "rents" within I.R.C. § 1372(e)(5). The government argues that this issue was not raised sufficiently in the district court. However, the district court held that the pleadings adequately raised the argument and expressly considered the regulation in its opinion. We agree that the argument is properly before us.

The Internal Revenue Service's definition of rents excludes payments for rooms or other space if certain conditions are met.

> "The term 'rents' does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units, of offices in an office building, etc., are generally 'rents' under section 1372(e)(5). Payments for the parking of automobiles ordinarily do not constitute rents."

Treas.Reg. § 1.1372–4(b)(5)(vi). Most of the services asserted by Crouch to remove the rentals from the passive investment income category were rendered by Jodaco Corporation, 90% owned by the taxpayer. In its audit, the IRS ignored the separateness of Jodaco, and for purposes of this opinion we assume that the services provided by Jodaco qualify as services provided by Seventeen Ventures.

The services cited by Crouch are that the corporation provides a swimming pool and patio, with patio furniture, rest rooms, and beach umbrellas; a recreation room available for parties and meetings equipped with appliances and furniture; a laundry room; storage compartments separate from the apartments; electric kitchens, carpeting, and draperies in the apartments; redecoration of the apartments every three years; a message service; individual parking spaces; optional cable television service; utility hookups; and a full-time maintenance man to do day-to-day repairs and odd jobs on the apartments. The trial court held, and we agree, that these services fall short of being "significant services" within the meaning of Treas.Reg. § 1.1372–4(b)(5)(vi). The regulation deems hotels, motels, boarding houses, tourist homes, and those businesses that are essentially equivalent, to be active businesses qualifying for Subchapter S status. Nearly all the services listed by Crouch in the instant case are commonly rendered by almost every luxury apartment complex. Therefore, we agree with the trial court that the rental income is to be classified as passive investment income. Because that income exceeded 20% of the corporation's gross receipts, the corporation lost its Subchapter S status in 1970 and there was no pass-through of the net operating loss to Crouch.

AFFIRMED.