## LOVE et al. v. UNITED STATES.
### No. 48946.

United States Court of Claims.
May 1, 1951.

Robert C. Cotten, Jr., Washington, D. C., for plaintiffs. Moyle & Wanlass, Washington, D. C., were on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge, delivered the opinion of the court:

The plaintiffs, a family group, sue for a refund of a portion of the income taxes paid for the calendar years 1940 and 1941.

It has been stipulated that if plaintiffs are entitled to recover the aggregate amounts should be $5,170.62 for 1940 and $4,128.87 for 1941.

The plaintiffs are members of a partnership or joint venture known as the Love Group Joint Venture. Each of them had an equal interest in the joint venture. The partnership filed income tax returns for the years indicated reporting income from certain real property as partnership income and setting out each individual's share therein. However, the legal title to the properties that produced the revenue involved here was held by the Leado Investment Company, a corporation owned by the plaintiffs. The corporation's returns bore the statement "Non Operative" and reported no gross income, no deductions, and no tax due. The facts are set out in detail in the findings.

After the plaintiffs had filed their returns and paid their income taxes for the two years deficiency assessments were proposed on the ground that some of the revenue which had been reported was derived from the property of the Leado Investment Company, a corporation; that taxes should have been paid by the corporation on this income and that the individuals should have reported this portion of their income as dividends.

The plaintiffs filed a formal protest against the proposed changes. After considerable discussion and a sequence of changes and adjustments an amount was agreed upon which was more than the individual taxes that had been reported, but less than the amount that would have been assessed if that portion of the income which flowed from properties standing in the name of the corporation had been taxed as corporate income and treated as dividends to the individual owners. No binding agreement was signed, but payment was made on the compromise basis with the understanding that a claim for refund might be filed and pressed.

The question is whether the Leado Investment Company should have been treated as a separate entity for Federal income tax purposes.

It is the contention of plaintiffs that the Leado Investment Company was a dummy or phantom corporation, used merely as a convenience to hold record title to certain properties, and that it was never in active operation. Defendant, on the other hand, contends that Leado's business activities were sufficient to require its being recognized as a separate and taxable entity.

The corporation was formed in 1916 with an authorized capital stock of $2,000 consisting of 20 shares of $100 par value each. In 1917 Edward K. Love and his wife acquired some real estate upon which they planned to erect a residence. The title to this property was placed in the name of the Leado Investment Company, and until 1927 not much, if any, other use was made of the corporation. Its stock had originally been issued to several employees of the Edward K. Love Realty Company but was later transferred to members of the Love Group. None of its capital stock was ever paid in and it never had a bank account in its name. No books of account were kept and its minute books recorded only the election of directors and officers from time to time as they were changed, and its dissolution in June 1944. The minute books, stock certificate book, seal, and other such records as were pertinent to the corporation were kept in the office of the Edward K. Love Realty Company. At all times the stock of the Leado Investment Company was beneficially owned by one or more of the five plaintiffs.

The Edward K. Love Realty Company was engaged in the business of arranging loans secured by deeds of trust upon real properties for its clients on a commission basis. One of the clients was the Love Group Joint Venture, which was formed to enable the five members of the Love family to pool their resources for the purpose of engaging in the business of lending money at interest, such loans being secured by deeds of trust upon real estate.

Commencing in 1927 there were defaults in payment of some of the Love Group's loans and after 1929 the number of loans in default increased rapidly. To protect its

investments the Love Group Joint Venture foreclosed certain deeds of trust securing the defaulted notes and had the property sold at public auction. Frequently a representative of the Love Group made the highest bid; in such cases the trustee was directed to make his deed to the Leado Investment Company. Record title was placed in Leado to facilitate the subsequent sale and conveyance of the property so transferred. After the title was recorded subsequent transfers of the property were made by deed signed by Leado's officers.

After legal title to these properties was transferred to Leado, that company executed promissory notes accompanied by deeds of trust in amounts equal to the unpaid balance due at the time of foreclosure. These notes and deeds of trust were made in the name of and given to a nominee of the Love Group Joint Venture; these payees endorsed the notes without recourse and delivered them with accompanying papers to the Edward K. Love Realty Company. The properties standing in Leado's name were rented to tenants, usually on a month-to-month basis without written agreements; but sometimes written leases were executed. Management of the properties and collection of rentals were handled by management agencies which paid all expenses incident to their operation and upkeep and remitted the balance less commissions to the Edward K. Love Realty Company.

The notes referred to above were interest-bearing, but neither the notes nor the deeds of trust were sold or pledged by the Love Group Joint Venture; they were retained until the real property they related to was sold. This practice was followed in order to protect the members of the Love Group Joint Venture against possible judgments as all actions at law would be brought by or against the Leado Investment Company; to provide a record of sums originally invested in loans secured by such real property; and to give members of the Love Group complete control over all properties which secured their joint loans.

There is ample record evidence to show that the Edward K. Love Realty Company acted as the fiscal agent of the Leado Investment Company, the Love Group Joint Venture, and the individual plaintiffs, receiving and disbursing moneys belonging to each and keeping the records thereof.

The charter of the Leado Investment Company stipulated in part that the corporation was formed for the purpose of buying and selling real estate, other securities, holding real estate and securities for investment, and transacting such other business as was incident to caring for and improving real estate held for investment and profit.

In June 1944 the Leado Investment Company was dissolved as a corporation on account of the tax problems that had arisen. Each parcel of land to which it then held title was transferred, without consideration of any kind, by deed to a person named John Dooly, who then executed a quitclaim deed to all such property, subject to the deeds of trust thereon previously given by Leado to the members of the Love family. The use of a nominee, meaning a person in whose name the title to property is carried for someone else, or a person holding the legal title to real property for the convenience of another, is a prevailing practice in St. Louis, Missouri, where such nominees may be either individuals or corporations. The person or corporation holding legal title to real property in St. Louis is commonly known as a straw man or straw nominee.

There is no doubt that for Federal tax purposes a separate corporate entity may sometimes be disregarded. Seattle Hardware Company v. Squire, D.C., 83 F. Supp. 106, affirmed, 9 Cir., 181 F.2d 188.

On the other hand, the taxpayer may not escape the tax consequences of a business arrangement which he made upon the asserted ground that the arrangement was fictional. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406.

The general principle of law is stated in the opinion in the case of Moline Properties v. Commissioner, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, from which we quote the following: "The doctrine of corporate entity fills a useful purpose in business life. Whether the pur-

pose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."

In the instant case the funds which were collected in the form of rents and payments did not actually flow through the corporation's hands. They were collected and distributed by the Edward K. Love Realty Company as agent for all of the interested parties, including the Leado Investment Company, but this was a matter of convenience in handling. Any of the parties interested in the corporation could have insisted at any time that the money flow through the corporate channels and be distributed in that fashion. The short cut method of handling was probably rendered easier by virtue of the family ownership. Estate of Whitfield v. Commissioner, 14 T.C. 776, 783–784.

■ The Leado Investment Company held legal title to approximately 100 parcels of land in the city of St. Louis, the annual income from which was in excess of $50,000. Acting by its elected officers, Leado entered into written leases of property; executed deeds of trust; executed at least two general warranty deeds; entered into at least one general option agreement to sell real property; and purchased and held fire insurance policies upon real property to which it held the record title. It was sued by the city of St. Louis for delinquent personal property taxes, which suit went to judgment in favor of the city and which judgment was paid. It brought suits in the city courts upon notes and for the restitution of property; filed Federal social security tax returns reporting employer and employee taxes, based on ten employees, which were paid; and also paid United States unemployment compensation taxes as an employer of eight or more persons. This is considerable activity for a phantom corporation.

In view of the fact that the Leado Company was used for so many business purposes and was available at all times for use for those purposes, the fact that it held properties involving large annual income, that it sued and was sued and was maintained during the taxable period involved, precludes the conclusion on any reasonable basis that it was merely a phantom organization. It was used for a business purpose.

On these facts we conclude that Leado did carry on business and therefore had a tax identity distinct from its stockholders.

Plaintiffs could have conducted the business of managing these properties in other ways. But they chose to retain and utilize the existing corporate structure of Leado. They thus avoided the risk of personal liability with respect to these properties. They avoided any personal liability on any warranty deeds which the corporation might sign. Having chosen to operate in this fashion, having enjoyed the advantages of incorporation, and having actually conducted business in the name of the corporation, plaintiffs cannot avoid the tax consequences of their choice.

That a corporation is regarded as a "straw," a "dummy," a "phantom," in itself proves nothing. The concept of the corporation is itself a fiction. A corporation is an artificial person. It operates under a charter granted it by the state, conferring certain rights, and also conferring certain privileges and exemptions in return for complying with certain rules or conditions. The decision to recognize or not to recognize the tax identity of a corporation depends upon what the corporation does, not what it is called, how many or how few own it, or how they regard it. Whether much or little use was made by plaintiffs of the Leado corporation, it was available to them at all times, like the musket behind the door, for use when needed or when occasion should arise. We hold that they did in fact use it to such an extent that its separate identity must be recognized.

The petition is dismissed.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.