**Beverly B. BISTLINE, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 15716.**

United States Court of Appeals
Ninth Circuit.

May 13, 1958.

As Amended on Denial of Rehearing
Aug. 8, 1958.

Bistline & Bistline, F. M. Bistline, R. Don Bistline, Pocatello, Idaho, for appellant.

Charles K. Rice, Asst. Atty. Gen., Thomas N. Chambers, Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Ben Peterson, U. S. Atty., Boise, Idaho, for appellee.

Before POPE, FEE and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

There is only one question in this case. The trial court held that within a period of two years there had been a series of sales of real estate, which had been given to taxpayer by her father and which had been held primarily for sale to customers in the ordinary course of business, within the meaning of § 117(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) (1), and that the profit realized should be taxed as ordinary income rather than as capital gain.

 This is obviously a question of fact, which ordinarily is governed by the findings of the trial court, unless these are clearly erroneous or unless an appellate court is convinced by an examination of the entire record that a mistake has been committed. Much of the criticism directed at appellate opinions in this field has a sophomoric ring because of the failure of the writers to regard this principle. Upon review of tax cases, the appellate courts are not laying down cabalistic formulae for decision of future cases, but, on the one hand, are either justifying, explaining or fitting facts found by the trial court to the language of the statute. On the other hand, the courts, upon review, are declaring the finding is clearly erroneous or pointing out that a mistake has been made in the application of the facts or that the trial court has misapplied the statute. It is rare that the set of facts and the tone of the circumstances deviate so slightly from another that the decision or the expression of an appellate court as to the one can be used as a binding precedent for the disposal of the other.

Prior to her admission to the practice of law in Idaho, Beverly B. Bistline, in 1949, worked as a legal secretary in the law office of Bistline & Bistline, the law firm of her father, F. M. Bistline. The latter had a similar case before this Court which she presented as an attorney. Her father argued the present case on her behalf before this Court. Her parents transferred by gift deeds approximately two hundred lots of improved and unimproved real estate in and near the City of Pocatello to her on July 1, 1947. At the time of the transfer, Beverly was twenty-four years of age and employed as the business manager of the Pocatello Transit Company, a business owned by her father. These properties had been held by her father for some years. There are facts from which a strong inference can be drawn that F. M. Bistline had held the property for sale in the real estate business. He had sold "quite a little" real property before 1946. Up until the first of 1946, he and his father had owned a real estate brokerage business in Pocatello called the Bistline Realty Company, on the books of which, after Bistline had sold out his interest and the name had been changed, some of the property given to Beverly and some which remained in his ownership on July 1, 1947, was listed for sale, although no prices were set upon the parcels. Bise, Inc., was organized in 1948 as a family holding corporation. There was no real estate held by it, except three lots through foreclosure, which were immediately deeded to Beverly. It had a bank account and kept a set of books. Beverly had a share in this enterprise. Contracts and mortgages were handled by this corporation on mon-

ey which F. M. and Beverly made from sales of property and from income from the bus company and from other money which F. M. and Beverly had to invest. F. M. and Beverly planned to put in future sales of real property. But this personal holding corporation never completed its organization, because F. M. Bistline "got scared." The reason for not selling some of these properties from 1938 to 1941 was stated by F. M. Bistline. He said: "During some of those years the bus business was awfully good and they had me up in an income tax bracket where I wasn't interested in selling and paying additional tax."

Immediately after the gift of this property, Beverly began to sell portions thereof. The first sale was made within five weeks of the gift. Her attitude was not passive. In consultation with her father, as business agent, the trial court found she was "frequently and continuously engaged in the negotiation and/or consummation of the sale of her properties." However, it is difficult if not impossible, in view of the facts heretofore recited, to separate her real estate business apart from the real estate activity of F. M. Bistline. There is no doubt that F. M. Bistline handled all of the real estate transactions of his daughter as her agent in continuity with his previous dealings therein. He held them for sale as her agent after the gift. Beverly never failed to follow her father's counsel. Although she was fully employed in another enterprise which he owned, she was in effect engaged also in the real estate business as a joint enterprise with him. The purchasers uniformly came to F. M. Bistline, and he negotiated with them and counseled with her before sale. F. M. Bistline was known in connection with real estate business apparently, and the prospective purchasers therefore sought him out. He acted very cannily in regard to this property, both before and after the gift. He said: "One never knows when he is going to sell real estate, particularly vacant real estate. I would have sold these parcels of real estate if we could come to terms, but I want to make it clear that at no time did

we ever go out and set prices on that property and endeavor to sell it. * * * I generally ask the other fellow to name his price first * * *. It makes it a little easier because he might offer more than I would have sold the lot for, and I was trying to get all I could out of them. * * * I never had any trouble with them coming back."

Soon after these properties were transferred to her, Beverly began to sell them, as already pointed out. The first sale was on August 5, 1947. During 1947 she sold five lots and realized a net profit of $2,950. In the following year, she made a net profit of $19,148.75 out of four separate transactions in which she sold one hundred twenty-three and one-half lots.

These sales did not wind up her dealings in real estate. At least, at the time of trial she estimated that she had real property which she valued at $10,000, and $36,000 in mortgages and contracts on real estate.

Upon this state of facts, the trial court made findings which support the conclusion that Beverly Bistline during these years made sales of property held by the taxpayer primarily for sale to customers in the ordinary course of her trade or business, and that therefore the profit thereon could not be classed as capital gain.

When it is considered that this property had been listed by F. M. Bistline for sale in an office and subsequently given to her at a time when he did not wish to make sales on account of his high income tax bracket, it is difficult to separate her activities from his. He continued to act as a real estate agent where before he had listed the properties as owner in his own office, apparently with the knowledge of Beverly. After she was owner, the first sale was within about five weeks of acquisition; there were seven substantial transactions in this real property spaced within eleven months. Beverly was employed in the transportation company of her father. But she participated in each of these real estate transactions. After eleven months, she still had a great deal of real property remaining, and there is an inference that it also was for

sale. The money from these sales was reinvested in other real estate and contracts on real property and real mortgages. While Beverly did not actively promote sales or make any attempt to improve the property, it is obvious that there was no necessity of doing either after she got title. The properties were, in part at least, listed for sale and did sell as unimproved lots. The sale of one hundred twenty-eight and one-half lots for a total profit of $22,098.75 cannot be described as unsubstantial either in nature or extent.

"What is and what is not trade or business and when property is or is not held for sale to customers are questions of fact." Stockton Harbor Industrial Co. v. Commissioner, 9 Cir., 216 F.2d 638, 650.

This Court has never set up formulas of fact as rules of law. At times the findings of fact of the District Court are accepted as conclusive where supported by no theory theretofore applied. But the same cause might have been reversed if there were clear error in the findings or where, upon the record as a whole, we were convinced that a mistake had been made.

In this case, the findings are not clearly erroneous. This Court is not convinced any mistake has been made.

Affirmed.