**JERSEY LAND AND DEVELOPMENT CORPORATION, a New Jersey Corp.**

v.

**UNITED STATES of America, Appellant.**

No. 75–2120.

United States Court of Appeals, Third Circuit.

Argued March 26, 1976.

Decided July 29, 1976.

---

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, William A. Friedlander, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Jonathan L. Goldstein, U. S. Atty., Newark, N. J., of counsel.

Albert G. Besser, Bernard J. D'Avella, Jr., Hannoch, Weisman, Stern & Besser, Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The defendant, United States, appeals from an adverse judgment of the district court which held that the plaintiff taxpayer was entitled to treat its gain on the sale of certain industrial real estate as capital gains.

The essential facts as found by the district court are as follows: William J. Bigley, president and sole shareholder of the plaintiff, Jersey Land and Development Corporation ("Jersey Land"), also headed Bigley Brothers, Inc. ("Bigley Brothers"), a

large New Jersey trucking concern engaged in the business of hauling heavy construction materials. By the mid-1950's, Bigley Brothers' main terminal in Hoboken, N. J. could no longer accommodate the company's growing number of vehicles and other equipment. In addition, it determined that it would be advantageous to store construction materials for its clients on its own site. Consequently, it began seeking a new and larger facility for its expanding operations.

Bigley Brothers' need for a larger terminal led to the formation of the plaintiff, Jersey Land, by Bigley in 1957. Shortly after its incorporation, Jersey Land entered into a lease-option agreement with the Township of North Bergen, N. J. covering approximately 97 acres of marshland owned by the township. Under the terms of the agreement, Jersey Land leased the North Bergen tract for seven years at an annual rental of $5,000 and acquired an option to purchase the same at a price of $700 per acre. However, its option to purchase the property was contingent upon its filling and grading of the tract in order to make it suitable for commercial and industrial uses. Jersey Land agreed to fill and grade at least twenty-five acres during the first year of the lease and at least ten acres in each subsequent year. Upon completion of the filling and grading of any five acre segment, it could exercise its option to purchase that segment. In addition, the agreement provided that Jersey Land could sell, assign or sublet its rights under the lease although it would remain fully liable for the terms and conditions thereof.

Following execution of the agreement with North Bergen, Jersey Land leased a fourteen acre segment of the tract to Bigley Brothers at a rental of $5,000 per annum and the trucking company moved its operations to the new site. Jersey Land also commenced its filling and grading of the property in accordance with its agreement with the township.

By early 1961, Bigley Brothers had encountered serious financial difficulties and, as a result, Bigley decided to sell his trucking business. In January, 1961, he negotiated a sale of Bigley Brothers to Youngstown Cartage Corporation ("Youngstown"). Although the sale did not receive the requisite Interstate Commerce Commission approval until 1964, Youngstown took immediate control of Bigley Brothers' trucking operations under a lease arrangement with the company. This included operation of the facilities of Bigley Brothers located on the North Bergen tract for which Youngstown began paying rent to Jersey Land.

Prior to the sale of the trucking company to Youngstown, Jersey Land had incurred approximately $50,000 in filling and grading costs on the North Bergen tract and had acquired, through the exercise of its option, a single five acre segment. However, even after the sale of Bigley Brothers, it continued its filling and grading operations expending an additional $600,000 in the process. By the time its lease with North Bergen ended in 1964, Jersey Land had exercised its options over approximately seventy-five acres of the tract.

Shortly after the sale of Bigley Brothers in 1961, Jersey Land began selling portions of the North Bergen tract over which it had exercised its options. By 1968, it had sold approximately forty of its seventy-five acres at a considerable profit in six separate transactions. None of these sales were solicited by Jersey Land. Instead, Jersey Land was sought out by the purchasers. Moreover, Jersey Land never established a sales office, advertised the property or otherwise operated as a typical real estate business. It is noteworthy, however, that during this same general time period, several of Bigley's other corporations had also acquired marshland properties, improved them through filling and grading, and thereafter sold them at a profit.

Jersey Land's treatment of the gain on sales occurring in 1963 is at issue on this appeal. During that year, Jersey Land made sales of approximately twenty acres of the tract on which it realized a net gain of $294,256.15. This gain was reported as capital gains on its tax return for the year in question. Thereafter, the Commissioner of the Internal Revenue Service determined

that this gain was not entitled to capital gains treatment under 26 U.S.C. § 1201 because it was derived from the sale of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". Hence, he concluded that the gain should have been reported as ordinary income and assessed a tax deficiency against Jersey Land.

Jersey Land paid the deficiency and then brought this action for a refund in district court. After trial, the district court entered judgment in favor of Jersey Land finding that the gain on the sales qualified for capital gains treatment because plaintiff had not held the property sold primarily for sale to customers in the ordinary course of its business. Rather, the court determined that it had acquired and held the property to facilitate Bigley's trucking business. However, in reaching this conclusion, the district court erroneously found that Jersey Land had incurred more than $600,000 in filling and grading costs prior to the sale of Bigley Brothers to Youngstown.

The government immediately called this error to the district court's attention on a motion under Rule 52(b), Fed.R.Civ.Proc., requesting the court to amend its findings and judgment. After reconsideration, the district court revised its initial opinion to correct this mistake of fact. However, it determined that this error had no effect on its determination that the property had not been held by Jersey Land for sale in the ordinary course of its business. In affirming its initial conclusion in this regard, the district court emphasized: (1) that Jersey Land's original purpose in entering into the lease-option arrangement was to further Bigley's trucking business; (2) that Jersey Land, rather than promoting sales of the property, had been sought out by the purchasers; (3) that it had never set up a sales office, or otherwise operated as a typical real estate business; (4) that sales had been infrequent; and (5) that the plaintiff still retained much of the North Bergen tract. This appeal followed.

The sole issue for our consideration is whether the district court erred in conclud-ing that the North Bergen property was a capital asset which generated capital gains, rather than ordinary income, upon its disposition by the plaintiff. In this Court, the government reiterates its contention that the North Bergen tract was held by Jersey Land "primarily for sale to customers in the ordinary course of its business". Property held for such a purpose by a taxpayer is specifically excluded from the definition of capital assets found in 26 U.S.C. § 1221. Hence, the government argues that the district court erroneously determined that the gain from the sales in question qualified for preferential capital gains treatment.

In challenging the district court's decision, the government points out that Jersey Land both incurred the bulk of the improvement costs and acquired seventy of the seventy-five acres it ultimately purchased after the sale of Bigley Brothers to Youngstown in early 1961. Consequently, it maintains that Bigley's trucking business had no relation to the purposes for which Jersey Land eventually improved, acquired, and held the bulk of the North Bergen tract. Since the plaintiff offered no evidence indicating that it held the property for some other legitimate investment purpose and since it bore the burden of demonstrating that the property involved was not held for sale, the government argues that the district court's decision cannot be sustained for this reason alone.

However, in seeking reversal of the district court's decision, the government does not rely solely on its contention that Jersey Land failed to carry its burden of proof. It also maintains that the record evidence clearly demonstrates that Jersey Land held the property primarily for current sale rather than investment purposes. In this regard, it emphasizes: (1) that the plaintiff looked to the extensive improvements it made to the property, rather than market appreciation, to create gain on resale; (2) that the plaintiff held the property for a relatively short time; and (3) that Jersey Land's acquisition, development and sale of the marshland property was not an isolated event but part of a pattern of such activi-

ties carried on by a number of Bigley's corporations during the period in question. These factors, it contends, are far more significant in determining the purposes for which Jersey Land held the property than those relied on by the district court and point unmistakeably to the conclusion that the plaintiff held the property for sale in the ordinary course of its business.

Jersey Land, on the other hand, argues that the district court's conclusion that it did not hold the property for sale reasonably flows from the court's basic findings that, inter alia, it had initially entered into the lease-option arrangement to facilitate the trucking business, that it had not solicited any of the sales in question, and that it had never operated in the fashion of a typical real estate business. These underlying findings of fact, it claims, are fully supported in the record and thus cannot be said to be clearly erroneous. Hence, it asserts that the district court's ultimate conclusion based thereon should not be disturbed on appeal.

■ Whether or not a taxpayer has held real property for sale to customers in the ordinary course of its business is an issue that has often been litigated in the federal courts. Despite this volume of litigation, however, there is no fixed formula or rule of thumb to which a court may readily resort for guidance in resolving this issue. Rather, each case must, by necessity, turn upon its own facts since this question is, in the final analysis, one of fact to be determined from the totality of the circumstances surrounding each particular case. *Yara Engineering Corp. v. Commissioner of Internal Revenue*, 344 F.2d 113 (3d Cir. 1965); *Kaltreider v. Commissioner of Internal Revenue*, 255 F.2d 833 (3d Cir. 1958). However, even though the trial court's conclusion as to the purpose for which a taxpayer has held property is a factual determination, it is one which this Court may review free of the restraining influence of the "clearly erroneous" rule since it is in the nature of an ultimate finding of fact. As such, it is but a legal inference drawn from the basic facts in the case which we may

review as we would any other legal ruling. *Pennroad Corp. v. Commissioner of Internal Revenue*, 261 F.2d 325 (3d Cir. 1958), *cert. denied sub nom., Madison Fund, Inc., et al. v. Commissioner of Internal Revenue*, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 766 (1962). And, in conducting our inquiry into the soundness of this legal conclusion by the district court, we must be mindful of the Supreme Court's directive that the term capital asset is to be narrowly construed and the exclusions therefrom broadly defined. *Corn Products Co. v. Commissioner of Internal Revenue*, 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

■ After evaluating the entire record before us and without disturbing the district court's basic findings of fact, we are convinced that the district court erred in determining that the gain from the sales in question was entitled to capital gains treatment. In reaching its contrary conclusion, the district court placed heavy emphasis on its finding that Jersey Land had initially entered the lease-option arrangement to advance the interests of Bigley's trucking business. However, in our view, this fact is largely irrelevant to the issue before us. In the first place, a taxpayer's original purpose in acquiring a particular piece of property, though pertinent, is not determinative of how the gain from the subsequent sale of that same property will be treated for tax purposes. Rather, it is the taxpayer's primary purpose in holding that property at the time of sale which determines whether the gain therefrom will qualify as capital gains or be taxed as ordinary income. *Ehrman v. Commissioner of Internal Revenue*, 120 F.2d 607, 610 (9th Cir. 1941), *cert. denied*, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534 (1941); *Juleo, Inc. v. Commissioner of Internal Revenue*, 483 F.2d 47, 50 (3d Cir. 1973) (Gibbons, J., dissenting), *cert. denied*, 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). Moreover, in the instant case, Jersey Land's original motivation in entering the lease-option agreement is even less deserving of probative value since the plaintiff both improved and acquired the vast majority of the North Bergen tract after

the sale of Bigley Brothers to Youngstown in 1961. Consequently, after the sale, the needs of the trucking business could have played no part in Jersey Land's decision to continue the expensive filling and grading operations on the North Bergen property and thereafter exercise the options it acquired in the process. The sale simply destroyed any causal relationship between Bigley Brothers and the purposes for which Jersey Land purchased and held the property in question.

Nor does the fact that Jersey Land's obligations to fill and grade the tract in accordance with the terms of the lease-option agreement continued after the sale of Bigley Brothers alter our conclusion in this regard. Under the terms of the agreement, Jersey Land was empowered to sell, assign, or sublet its rights. In view of the valuable options which arose upon the improvement of any five-acre segment, Jersey Land should have experienced little difficulty in so doing after its original purpose in entering the agreement expired with the sale of the trucking business. Hence, Jersey Land can hardly argue that it had locked itself into the arrangement at a time when the interests of Bigley Brothers were its paramount concern. In any event, even if Jersey Land was obligated to go forward with the filling and grading operations after the sale of Bigley Brothers, the gain on the sales in question would still fail to qualify for preferential capital gains treatment if, as we believe, it thereafter acquired and held the improved property primarily for sale to customers in the ordinary course of its business.

■ Likewise, we find the district court's reliance on the absence of such factors as frequent sales, solicitation by the plaintiff, or a sales office and other typical trappings of a real estate business to be misplaced. Although such factors have been often cited in decisions determining how the gain on sales of residential real estate will be treated for federal tax purposes, they are of limited utility when industrial or commercial real estate is involved. As this Court stated in *Pennroad, supra:*

"A number of so-called tests or aids in determining whether a business of selling real estate exists were developed in cases dealing with property devoted to residential purposes. *Certainly the type and amount of advertising, subdivision, development, solicitation, holding period prior to sale, etc., are decidedly different when dealing with industrial real estate.*" 261 F.2d at 330 (emphasis added); *accord, Stockton Harbor Indus. Co. v. Commissioner of Internal Revenue,* 216 F.2d 638 (9th Cir. 1954), *cert. denied,* 349 U.S. 904, 75 S.Ct. 581, 99 L.Ed. 1241 (1955).

Moreover, even in cases involving residential real estate, reliance on such factors as those emphasized by the district court can be deceptive since they focus, for the most part, on marketing techniques, rather than the ultimate issue before the court—a taxpayer's motivation in holding a particular piece of property. As the Fifth Circuit so aptly pointed out in *United States v. Winthrop,* 417 F.2d 905 (1969):

"The taxpayer has made much over the fact that no office was used, no brokers were employed, no time was spent promoting sales, and no advertising was used. While advertising, solicitation and staff are the usual components of a business, they are not a necessary element in either the concept or the pragmatics of selling." 417 F.2d at 912.

We therefore believe that the absence of such factors in the instant case sheds little light on the question of whether Jersey Land held the North Bergen tract primarily for purposes of sale.

■ On the other hand, the factors called to our attention by the government strongly support its contention that Jersey Land entered the business of selling improved industrial and commercial real estate soon after the sale of Bigley Brothers, if not before. After that sale, Jersey Land expended approximately $600,000 in improving the North Bergen property to make it suitable for industrial and commercial uses and exercised its options to purchase the majority of the tract. Although the plaintiff bore the burden of demonstrating that

it did not hold the property primarily for sale to customers in the ordinary course of its business, it offered no acceptable explanation for its decision to continue improving and ultimately to acquire the North Bergen property. Hence, we can only conclude that the Commissioner was correct in determining that it had decided to purchase and hold the tract primarily for purposes of resale. If there was some other explanation for its actions, it was incumbent upon the taxpayer to call it to our attention.

Our conclusion in this regard is buttressed by an examination of the nature of the gain realized by the plaintiff upon the sales in question. The Supreme Court has often pointed out that the capital gains provisions are intended to apply "only in situations typically involving the realization of appreciation in value accrued over a substantial period of time." *E. g., Commissioner of Internal Revenue v. Gillette Motor Co.*, 364 U.S. 130, 134, 80 S.Ct. 1497, 1500, 4 L.Ed.2d 1617 (1960). However, in the instant case, Jersey Land's gain resulted, not from such market appreciation, but from the substantial improvements made by it on the North Bergen tract. That the plaintiff thus looked to the value it added to the property, rather than market appreciation, to create gain certainly suggests that the plaintiff held the property for current sale.

Closely aligned to this point is the fact that Jersey Land held the property for a relatively short time period. As previously noted, the plaintiff acquired the bulk of the North Bergen tract between 1961 and 1964 through the exercise of the options which ripened during that same period. The sales in question occurred in 1963. This short holding period also indicates that Jersey Land had no expectation of realizing gain through market appreciation "over a substantial period of time" and that it held the property for current sale rather than investment purposes.

Finally, we find it extremely significant that a number of Bigley's other corporations acquired, improved and resold marshland properties during this same general time frame. Although the fact that Big-

ley's other corporations were engaged in such a business cannot, as the district court pointed out, conclusively establish that Jersey Land was also operating as a dealer in improved industrial and commercial real estate, we find it highly relevant in determining what Jersey Land's intentions were in holding the North Bergen tract, especially since it offered no evidence on this point.

From the foregoing analysis, it is evident that not only did Jersey Land fail to sustain its burden of proving that it did not hold the North Bergen tract primarily for sale to customers in the ordinary course of its business, but also that the record evidence clearly demonstrates that this was its purpose in acquiring and holding the property. Since the North Bergen property thus falls within a specific exclusion from the definition of capital asset found in 26 U.S.C. § 1221, we find that the district court erred in determining that the gain from the sales in question qualified as capital gains rather than ordinary income.

The judgment of the district court will be reversed and this case remanded with directions to enter judgment in favor of the defendant, United States.