**Milton E. ANDERSON and Mae E. Anderson, Appellees,**

v.

**UNITED STATES of America, Appellant.**

No. 76–1130.

United States Court of Appeals, Ninth Circuit.

June 2, 1977.

Stephen J. Swift, Asst. U. S. Atty., Tax Div., San Francisco, Cal., Scott P. Crampton, Gilbert E. Andrews, Jr., Robert T. Duffy, Atty., argued, Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

Richard S. Burriss, argued, Jones & Burriss, Los Altos, Cal., for appellees.

Before ELY and WALLACE, Circuit Judges, and BYRNE,* District Judge.

PER CURIAM:

The appellee taxpayers instituted a refund suit, seeking to recover taxes paid because the Internal Revenue Service disallowed a deduction claimed by the taxpayers for bad debts under 26 U.S.C. § 166 (1970). The District Court granted a judgment for the taxpayers, and the Government appeals.

In 1949 Milton Anderson commenced a floor covering business as a sole proprietorship. He incorporated the business in 1956, exchanging the assets of his business for stock in the corporation. The corporation rented its premises from Anderson. During the 1960's Anderson made several loans to the corporation, loans which the corporation regularly repaid until 1968. In that year and afterwards repayment came intermittently, and Anderson never recovered all of his money. In 1970 the corporation gave Anderson a promissory note consolidating prior loans and providing an interest rate of seven percent. In 1971 the corporation issued a second note consolidating the prior note with subsequent loans, and Anderson made further loans throughout 1971 and 1972. Although the corporation could have borrowed money from commercial sources, Anderson found it more convenient to lend

* Honorable William Matthew Byrne, Jr., USDJ, Central District of California, sitting by designation.

the money himself. As business declined after 1965, Anderson reduced the size of his operation and ultimately, in 1972, turned over the management of his business to his son-in-law. At that time, Anderson took a job with his brother's construction company. That same year his son-in-law decided to terminate the business.

The District Court specifically found, "Plaintiffs' dominant motivation in making loans to Anderson's of Compton, Inc., prior to December 1, 1971 [when Anderson decided to turn the business over to his son-in-law], was for the purpose of the trade or business as opposed to protecting an investment in the corporation." Accordingly, the court concluded that Anderson's worthless loans to the corporation constituted business bad debts deductible under 26 U.S.C. § 166.

While there may be some ambiguity in the District Court's finding in respect to Anderson's state of mind, it is clear that the court was mindful of *United States v. Generes*, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972), holding that for a stockholder-employee's worthless debts to qualify as deductible under 26 U.S.C. § 166, his dominant intent in lending money to the corporation must have been to preserve his job rather than his investment. We can perceive little basis upon which to speculate that, in finding that the motive for Anderson's loans was "for the purpose of the trade or business as opposed to protecting an investment in the corporation," the court confused the corporation's trade or business with that of the taxpayer.

A District Court's finding that a debt qualifies under 26 U.S.C. § 166 constitutes a mixed question of law and fact. *Lundgren v. Commissioner of Internal Revenue*, 376 F.2d 623 (9th Cir. 1967); *United States v. Keeler*, 308 F.2d 424 (9th Cir. 1962). But the basic factual data implicit in the court's finding are, like any other facts, subject to Fed.R.Civ.P. 52(a) and are not to be set aside unless clearly erroneous. "[T]he question for determination is whether the factual situation found by the district court is covered by the statute." *Keeler,*

*supra,* 308 F.2d at 428. The court's critical finding was Anderson's state of mind concerning the purpose of his loans. "[T]he state of a man's mind is as much a fact as the state of his digestion." *Edgington v. Fitzmaurice*, 29 Ch.D. 459, 483 (C.A.1885). There being substantial evidence to support the court's finding, the remaining question here is whether, having reviewed the record, we are left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Having reviewed the record, we are not left with such a conviction. Accordingly, the judgment of the District Court must be affirmed.

The Government attacks, on several grounds, the District Court's finding regarding Anderson's dominant motivation. It is argued that Anderson left the employ of the corporation so that it could continue on a smaller scale under his son-in-law's management. Anderson also had waiting a higher paying job with his brother's construction company, and in 1972 he accepted that employment. Anderson continued making loans even after he left the corporation. When he made the pre-1972 loans, Anderson did not believe that the corporation was on the verge of bankruptcy. Moreover, Anderson had already put substantial amounts of money into the corporation, and when he made his loans the taxpayers' combined average yearly salary from the corporation was only about $12,000. This evidence, according to the Government, conclusively demonstrates that the preservation of his salary was not Anderson's dominant motivation.

Certainly the foregoing evidence would support a finding that one of Anderson's motivations was to protect the value of the business, but the District Court had ample reason not to accord especial weight to these items of evidence. The District Court only permitted deductions under 26 U.S.C. § 166 for loans made before Anderson decided to leave the employ of his corporation. The fact that Anderson was willing to forsake his employment in 1972 has diminished

relevance as to his dominant motivation before the time when he realized that the business would not support both him and his daughter's family. The availability of a higher paying job does not necessarily mean that Anderson's loans were not made to protect his employment with the corporation, for Anderson's job history showed that he had long put a premium on being his own boss. Money is not the sole measure of a job's remuneration. In remaining with the corporation as long as he did, Anderson may correctly have foreseen that his job with his brother would not prove satisfactory. The fact that Anderson wanted to preserve the corporation as an asset when he made loans after leaving the corporation has some relevance as to his state of mind when he loaned the corporation money before leaving. But the District Court may well have believed that in late 1971 Anderson's state of mind abruptly changed when he realized that the business could not support both him and his son-in-law. In that case, the pre-1972 loans could well have been for the purpose of preserving Anderson's job rather than his investment. Though the corporation was not about to collapse, Anderson did testify that the corporation needed the money to stay in operation.

Finally, it should be re-emphasized that the question of intent is ordinarily a question of fact. *Estate of Franklin v. Commissioner of Internal Revenue*, 544 F.2d 1045, 1047 n.3 (9th Cir. 1976).

AFFIRMED.