PARKSIDE, INC. and Beaconcrest, Inc., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 75–2893.

United States Court of Appeals, Ninth Circuit.

Dec. 2, 1977.

Susan Long (argued), Bellevue, Wash., for petitioners-appellants.

Leonard J. Henzke, Jr. (argued), of Dept. of Justice, Washington, D. C., for respondent-appellee.

Before CHOY and KENNEDY, Circuit Judges, and PREGERSON,* District Judge.

CHOY, Circuit Judge:

The Commissioner of Internal Revenue (Commissioner) issued deficiency notices to taxpayer-appellants Parkside, Inc. (Parkside) and Beaconcrest, Inc. (Beaconcrest) upon determining that income reported as interest for certain taxable years brought the two corporations within the rigorous provisions of the personal holding company tax (PHCT), Int.Rev.Code of 1954, §§ 541–47,[1] and the Tax Court agreed. We reverse.

The basic facts in this case are undisputed. Parkside and Beaconcrest are Washington state corporations, the stock of which is owned in equal shares by three brothers and a sister: Philip Long, James Long, Dwight Long, and Erma Long McKenzie (shareholders). The stock in Parkside was inherited upon the death of their father. Beaconcrest was formed in 1960 to receive part of the assets of Standard Homes, Inc., a corporation owned and organized by the father to construct buildings for rental or sale. Parkside's principal assets consisted of 26 duplex homes, and Beaconcrest's principal assets consisted of 21 duplexes.

After his father's death, Philip Long left employment in the insurance industry to assume the presidency of both taxpayer-corporations. Concluding after study that liquidation of the two corporations would net no more than $150,000, Long decided to retain the duplexes and continue to rent them. The shareholders had inherited serious financial difficulty along with the property, however, and expenses continuously outstripped receipts. Long ultimately decided that the realty would have to be sold rather than unprofitably rented indefinitely.

To maximize sales proceeds, Long determined to sell the duplexes individually. As part of his plan to avoid the sales difficulties which had plagued his father, Long devised a "unique" set of criteria for potential purchasers, including employment, credit, and residence specifications. He first advertised the duplexes' availability for sale in 1964, and this was the first time that any had been offered for sale since the shareholders succeeded to their interests in 1960. He also contacted all tenants of the duplexes to explore the possibility of purchases by them. Encountering no success from either tactic, Long employed a succession of professional real estate agents who, in turn, ultimately disposed of the 47 units from January 1965 to October 1966, aggregating over $810,000 in sales. The units were generally sold "as is," without improvement, and taxpayers paid nearly $50,000 in brokerage commissions. From 1965

---

* Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. Unless otherwise indicated, all sections cited hereinafter are to the Internal Revenue Code of 1954.

to date of trial, taxpayers acquired no additional real property, their sole remaining activity consisting of receiving principal and interest payments from purchasers and making payments on the existing mortgages upon which they were liable.

> The Internal Revenue Code treats interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of [the taxpayer-corporation's] trade or business was sold or exchanged . . . [,]

§ 543(b)(3), as "rent" which, in turn, is generally excluded from personal holding company income where it constitutes 50 percent or more of taxpayer's adjusted ordinary gross income, § 543(a)(2)(A).[2] The Tax Court held that taxpayers did not qualify under the § 543(b)(3) exception—which, if applicable, would have rescued taxpayers from the adverse treatment of the PHCT provisions—because, in its opinion, taxpayers' realty was not "held primarily for sale in the ordinary course of [their] trade or business."

While we have been directed to no case construing the relevant language of § 543(b)(3), the above-quoted passage is nearly identical to that of § 1221(1) (definition of "capital assets")—"property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business"—and we can divine no reason to construe the thrust of these passages differently.[3] We will, therefore, turn to § 1221(1) cases for guidance.

 As a question of fact arguably mixed with law, our review of a lower Court's finding with respect to the nature of a taxpayer's holdings under § 1221(1) is subject to the restraint of the "clearly erroneous" rule. *See* Fed.R.Civ.P. 52(a); Int.Rev.Code of 1954, § 7482(a); *Malat v. Riddell*, 383 U.S. 569, 572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Rockwell v. Commissioner*, 512 F.2d 882, 884 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); *Estate of Freeland v. Commissioner*, 393 F.2d 573, 583 (9th Cir.), *cert. denied*, 393 U.S. 845, 89 S.Ct. 132, 21 L.Ed.2d 117 (1968); *Austin v. Commissioner*, 263 F.2d 460, 461–62 (9th Cir. 1959) (decided under § 117(a)(1) of the 1939 Code, now § 1221); *Los Angeles Extension Co. v. United States*, 315 F.2d 1, 2–3 (9th Cir. 1963) (same); *Bistline v. United States*, 260 F.2d 77, 78 (9th Cir. 1958) (same); *United States v. Beard*, 260 F.2d 81, 82 (9th Cir. 1958) (same).[4] *See also Commissioner v. Duberstein*, 363 U.S. 278, 289–91, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *United States v. Hart*, 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied sub nom. Robles v. United States*, 429 U.S. 1120,

---

2. Certain other requirements must be met with respect to dividend income. *See* § 543(a)(2)(B).

3. We note, moreover, that, at least at the time that a predecessor version of § 543(b)(3) was enacted, Revenue Act of 1938, ch. 289, § 403(g), 52 Stat. 558–59, Congress expressly evinced an intent that its statutory language be construed consistently:

> The terms used in this title [personal holding companies] shall have the same meaning as when used in Title I [income tax, including the capital assets provisions].

*Id.* § 408, 52 Stat. 564. While this section was omitted from the 1954 Code, we are convinced that tax concepts such as "held primarily for sale" should not be given different meanings where it is plain that they are expressed in a virtually identical manner. *See also* Int.Rev. Code of 1954, § 7701(28).

4. Some circuits apparently profess to apply a more searching standard of review to a finding that property was or was not held primarily for sale to customers in the ordinary course of a trade or business. *See Turner v. Commissioner*, 540 F.2d 1249, 1252 (4th Cir. 1976) ("clearly erroneous" rule applies to "subordinate facts," but "ultimate conclusion" is treated as a "question of law"); *Jersey Land & Dev. Corp. v. United States*, 539 F.2d 311, 315 (3d Cir. 1976) (as an "ultimate finding of fact," it is "but a legal inference," which is reviewable free of the "clearly erroneous" rule); *Biedenharn Realty Co. v. United States*, 526 F.2d 409, 416 n. 25 (5th Cir. 1976) (review is "plenary" and "not limited by the clearly erroneous rule"), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1977). *See also United States v. Winthrop*, 417 F.2d 905, 910 (5th Cir. 1969) (where facts are undisputed, "this ultimate issue is inherently a question of law").

97 S.Ct. 1155, 51 L.Ed.2d 571 (1977); *Lundgren v. Freeman*, 307 F.2d 104, 115 (9th Cir. 1962).[5] *See generally* 5A J. Moore, Moore's Federal Practice ¶ 52.03[1], at 2613–17, 2655–57 (2d ed. 1975); *id.* ¶ 52.03[5]. A factual finding by the trial court will ordinarily not be reversed unless the reviewing court concludes that such a finding is clear-

5. Some cases in our own circuit arguably suggest that our review is not bound by the "clearly erroneous" rule. *See Estate of Franklin v. Commissioner*, 544 F.2d 1045, 1047 n. 3 (9th Cir. 1976) ("whether . . . characteristics constitute a sale *for tax purposes* [under § 167(a)] is a question of law"); *Lundgren v. Commissioner*, 376 F.2d 623, 627 (9th Cir. 1967) (where a determination involves statutory interpretation—a mixed question of law and fact—it is subject to "review"); *United States v. Keeler*, 308 F.2d 424, 428 (9th Cir. 1962) (where "the question for determination is whether the factual situation found by the district court is covered by the statute," it is subject to "review"). *See also Anderson v. United States*, 555 F.2d 236, 237–38 (9th Cir. 1977); *Commissioner v. Smith*, 203 F.2d 310, 311 (9th Cir. 1953) (semble).

As an initial observation, we note that these cases did not arise under § 543(b)(3), § 1221(1), or their predecessors. Secondly, we believe that the plenary review of mixed questions of law and fact apparently exercised in *Lundgren v. Commissioner* and *Keeler* is undercut by *Malat, Duberstein, United States Gypsum Co., Lundgren v. Freeman*, and *Hart, supra.*

In *Malat*, the Supreme Court held that the word "primarily," as used in § 1221(1), means "of first importance" or "principally." Having so ruled, the Court did not consider whether the result reached by the district court was supportable on the there instant facts, but rather remanded the case for fresh *fact*-findings in light of its construction. *See* 383 U.S. at 572, 86 S.Ct. 1030. *See also Allen v. Trust Co.*, 326 U.S. 630, 635–36, 66 S.Ct. 389, 90 L.Ed. 367 (1946). In *Duberstein*, the Court found that the resolution for tax purposes of a purported gift's status is a question of fact, not law, and that the "clearly erroneous" standard of review applies even where, as here, the basic facts are undisputed. *See* 363 U.S. at 289–91, 80 S.Ct. 1190. In *United States Gypsum Co.*, the Court noted that, insofar as the district court's findings are inferences drawn from documents or undisputed facts, the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a) was applicable upon appellate review of those findings. *See Gillette's Estate v. Commissioner*, 182 F.2d 1010, 1014 (9th Cir. 1950) (applying the *United States Gypsum Co.* rule to appeals from the Tax Court). In *Lundgren v. Freeman*, after extensively reviewing question of fact doctrine, this court adhered to the reasoning of *Duberstein* in a case involving a question of mutual mistake, finding that the inferences drawn from the basic facts, as in *Duberstein*, were those based not upon a legal standard, but from "having had 'experience with the mainsprings of human conduct'." 307 F.2d at 115, *quoting Duberstein*, 363 U.S. at 289, 80 S.Ct. 1190. Finally, in *Hart*, this court sitting en banc reiterated the rule of *United States v. Page*, 302 F.2d 81, 85 (9th Cir. 1962), that the "clearly erroneous" standard applies to questions of fact, "even where arguably mixed with law." *See* 546 F.2d at 801–02 (citing Fed.R.Civ.P. 52(a), *Duberstein*, and *Lundgren v. Freeman*, including the "mainsprings of human conduct" language). The "clearly erroneous" standard was held to apply to the review of mixed questions notwithstanding the fact that *Hart* dealt with a criminal law setting which, if anything, would augur more, rather than less, thorough appellate scrutiny. *See* 546 F.2d at 805 n. 1 (Hufstedler, J., concurring & dissenting).

The determination of the nature of taxpayers' real estate holdings seems to us to be at least as factually-oriented as the *Duberstein* gift question which was held to be one of fact. We conclude that the present determination under § 543(b)(3) is a question of fact arguably mixed with law and is, therefore, under *Hart*, subject to the "clearly erroneous" rule. As in *Duberstein*, we too reason that the sources for resolution of the instant question lie more in the trial judge's "experience with the mainsprings of human conduct" than in a legalistic formula drawing standards of statutory application. Similarly, our review of trial court determinations with respect to other tax concepts has been held restricted by the "clearly erroneous" standard. *See, e. g., Gordon v. Commissioner*, 572 F.2d 193 (9th Cir. 1977) (estimate of § 4401 wagering income); *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir. 1977) (§ 6672 "person required to collect, truthfully account for, and pay over" tax); *Estate of Lowe v. Commissioner*, 555 F.2d 244, 245 (9th Cir. 1977) (former § 2035 "in contemplation of death"); *Silverman v. Commissioner*, 538 F.2d 927, 931 (9th Cir. 1976) (§ 2512(a) fair market "value"); *American Foundry v. Commissioner*, 536 F.2d 289, 291 (9th Cir. 1976) (§ 162(a) "reasonable" compensation and § 105(c) "plan"); *Sandor v. Commissioner*, 536 F.2d 874, 875 (9th Cir. 1976) (§ 446 authority of Commissioner); *Collman v. Commissioner*, 511 F.2d 1263, 1267 (9th Cir. 1975) (§ 170(c) "charitable contribution"; standard also said to apply to factual inferences from *undisputed* basic facts). *See also In re Taylor*, 514 F.2d 1370, 1374 (9th Cir. 1975); *Transducer Patents Co. v. Renegotiation Board*, 492 F.2d 247, 250 (9th Cir. 1974); *United States v. Alaska S.S. Co.*, 491 F.2d 1147, 1151 (9th Cir. 1974). *But see United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1107–09 (9th Cir. 1976).

ly erroneous, or it is definitely and firmly convinced that, upon an examination of the entire record, a mistake has been committed. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Allen v. United States*, 541 F.2d 786, 788 (9th Cir. 1976); *Collman v. Commissioner*, 511 F.2d 1263, 1267 (9th Cir. 1975); *Bistline, supra; Beard, supra.*

■ Analysis under § 1221(1) has focussed, *inter alia*, upon the following factors:

the length of holding of the property, the nature of the acquisition of the property, the frequency and continuity of sales over an extended period of time, the nature and the extent of the taxpayer's business, the activity of the seller about the property, and the extent and substantiality of the transactions.

*Los Angeles Extension Co.*, 315 F.2d at 3. *See Estate of Freeland*, 393 F.2d at 582–83; *Biedenharn Realty Co. v. United States*, 526 F.2d 409, 415 & n. 22 (5th Cir. 1976), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1977). *See also Malat v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). That sales take place in the course of a "liquidation" neither automatically compels nor forecloses a finding that property was held primarily for sale in the ordinary course of a trade or business. *Ehrman v. Commissioner*, 120 F.2d 607, 610 (9th Cir.), *cert. denied*, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534 (1941); *Commissioner v. Boeing*, 106 F.2d 305, 309 (9th Cir.), *cert. denied*, 308 U.S. 619, 60 S.Ct. 295, 84 L.Ed. 517 (1939); *Huxford v. United States*, 441 F.2d 1371, 1375–76 & n. 4 (5th Cir. 1971). *See Jersey Land & Dev. Corp. v. United States*, 539 F.2d 311, 315 (3d Cir. 1976).

■ Based upon factors such as the means by which taxpayers acquired the property in issue, the prior holding of those properties for rent, the "as is," piecemeal sale of the realty, and the absence of additionally-acquired properties, the Tax Court concluded that the taxpayers had not successfully sustained their burden of persuading the court that the Commissioner's determination was in error. We disagree.

The Tax Court itself recognized indicia—including the substantial commitment of taxpayer-corporations' president, Philip Long, to the acquisition, refinement, and implementation of real estate sales techniques and the large number of individual sales extending over two years—which would support the conclusion that, at least during the relevant tax years, the taxpayers held the property primarily for sale within the meaning of § 543(b)(3). We find the presence of additional factors sufficiently compelling to sway the balance: the fact that shareholders' father held the realty for rental *or* sale; the substantial advertising of the sales venture; and the substantial sums expended for brokerage commissions. While we rely on these factors in the instant case, we do not establish here a precise balance of factors as a rule of law for all cases of this type. In the final analysis, each case must be decided upon its own facts. This is especially so in tax matters. *See Los Angeles Extension Co.*, 315 F.2d at 3; *Bistline*, 260 F.2d at 78. We hold that the Tax Court's ruling below is clearly in error and must be reversed.

Moreover, we note the disingenuity of the Commissioner's claim that, in any case, taxpayers' original *reporting* of the income from sales of the involved realty as gains arising from the sale of *§ 1231(b)(1)* property (property used in the taxpayer's trade or business but *not* held primarily for sale to customers in the ordinary course of that trade or business) is "persuasive documentary evidence of taxpayers' own intent and understanding at the time the sales took place." In view of the apparently undisputed fact that, pursuant to the *original* returns, the *rate* and *amount* of tax calculated as owing by taxpayers were nevertheless based upon the higher schedule applicable to *ordinary* gains, such that the amendments subsequently filed did not require a change in computation, we find a disquieting inconsistency in the Commissioner's position, especially since taxpayers' original treatment was never challenged. While content to let the original, revenue-maximizing tax calculations stand, the Commis-

sioner nevertheless seizes upon an otherwise evidently proper filing, which apparently accidentally applied the wrong label to the reported income, as somehow estopping taxpayers from denying the nature of their holdings as first reported.

The Commissioner's reliance on *Morse v. United States*, 265 F.2d 788 (9th Cir. 1959), and *Maletis v. United States*, 200 F.2d 97 (9th Cir. 1952), *cert. denied*, 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1356 (1953), is misplaced. In those cases, we restated the general rule that a "taxpayer may not escape the tax consequences of a business arrangement which he made upon the asserted ground that the arrangement was fictional." 265 F.2d at 797 and 200 F.2d at 98, *both quoting Love v. United States*, 119 Ct.Cl. 384, 96 F.Supp. 919, 921 (1951). Here, taxpayers proffer no retroactive assertion of a fictional business arrangement; rather, they merely claim that their reporting of income as being from the sale of § 1231(b)(1) property was an inadvertent entry on their tax return forms. And, while the *Maletis-Morse* rule has been extended by this court to bind taxpayers to the characterization which they give to a transaction in filings with the Commissioner, *see In re Steen*, 509 F.2d 1398, 1402–03 n. 4 (9th Cir. 1975); *Demirjian v. Commissioner*, 457 F.2d 1, 5 & n. 19 (9th Cir. 1972), such is not the case here. That the instant taxpayers' determination of tax owed remained the same upon amendment supports the inference that no benefit was sought or obtained by either filing with respect to the involved entry.

In conclusion our review convinces us that a mistake has been committed by the Tax Court and that its crucial finding is clearly in error. *See Beard*, 260 F.2d at 85; *American Foundry v. Commissioner*, 536 F.2d 289, 292 (9th Cir. 1976). Accordingly, its judgment is reversed.[6]

REVERSED.

KENNEDY, Circuit Judge, dissenting:

In my view the Tax Court was correct, both in its ultimate conclusions of fact and in its ruling on the central legal question. I do agree with the opinion of the court that in this case the authorities under section 1221(1) provide the applicable rules for interpreting section 543(b)(3), although the identical language of these two sections may not always require parallel construction. As I interpret those authorities, however, the decision of the Tax Court should be affirmed.

A taxpayer's intent in acquiring an asset is rarely a controlling factor in determining the purposes for which it is held at the time of sale, and doubtless a bona fide intention to hold for investment is eclipsed if at some later time the primary purpose for holding an asset is for sale to customers in the ordinary course of business. *Ehrman v. Commissioner*, 120 F.2d 607 (9th Cir.), *cert. denied*, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534 (1941); *Biedenharn Realty Co. v. United States*, 526 F.2d 409 (5th Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1977). In the instant case, however, the new direction taken by the corporation was not so complete a change in purpose or business objective as to require the conclusion as a matter of law that the taxpayers held the property primarily for sale in the ordinary course of business.

This was simply a case of two corporations going out of business as quickly and efficiently as they could. The minimal sales efforts made were consistent with this design. Of the twenty-six duplexes held by Parkside, twenty-one were sold to the same two parties. Four buyers accounted for sixteen of the twenty-one sales by Beaconcrest. While it is true that the sales were individual and were made over the course of a two-year period, nevertheless the corporations were simply trying to sell the property for whatever price they could get during a liquidation phase. Neither sales activities nor management skills enhanced the value of the corporate assets. No improvements were made for purposes of sale.

**6.** In view of our disposition, we do not reach appellants' contention that the Commissioner's assertion of PHCT liability against them was a case of discriminatory enforcement of the tax laws.

The employment of brokers, on these facts, indicates to me that the corporation had neither the capacity nor the policy to engage in selling as a regular course of business. Finally, the properties were not capable of alternative use or disposition. Once it became apparent that no rental market existed, the duplexes had to be sold.

The operation of the personal holding company provisions are such that a determination that the properties were not held primarily for sale in the ordinary course of business is adverse, even harsh, to the taxpayers. Nonetheless, the decision of the Tax Court on this issue was correct and should be affirmed.

PREGERSON, District Judge, concurring:

Whether taxpayers' real property was "held primarily for sale to customers in the ordinary course of [taxpayers'] trade or business" within the meaning of 26 U.S.C. § 543(b)(3) is a question of law, see *Estate of Franklin v. Commissioner*, 544 F.2d 1045, 1047, n. 3 (9th Cir. 1976), to which the "clearly erroneous" rule should be inapplicable. *Winthrop v. Commissioner*, 417 F.2d 905, 910 (5th Cir. 1969).

While referring to the "clearly erroneous" standard, Ninth Circuit cases such as *Austin v. Commissioner*, 263 F.2d 460 (1959), still carefully analyze the facts in light of the applicable law. This careful analysis, in effect, amounts to a de novo review of the Tax Court's legal conclusion.

I vote to reverse because an analysis of the facts of this case in light of the applicable law reveals that the Tax Court reached an incorrect legal conclusion.