T.C. Memo. 1998-341


UNITED STATES TAX COURT


CANE CREEK SPORTSMAN'S CLUB, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16726-96.                    Filed September 24, 1998.


James F. Hooper and Paul R. Chamblee (officers), for
petitioner.

<u>Marshall R. Jones</u> and <u>Shuford A. Tucker, Jr.</u>, for
respondent.


MEMORANDUM OPINION

FAY, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for 1993 in the amount of
$23,327.

All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Petitioner seeks to have its separate existence disregarded and its realized gain on the 1993 sale of certain improved land treated as income taxable to a partnership, because its incorporators believed that they had created a partnership, not a corporation. No issue has been raised as to respondent's determinations that petitioner's basis in the property was $56,697 and that the sale resulted in a taxable gain in the amount of $112,053.

Some of the facts have been stipulated by the parties and are so found. The stipulation of facts filed by the parties and the accompanying exhibits are incorporated herein by this reference.

## Background

Petitioner was incorporated under the laws of the State of Alabama on January 20, 1971. The corporate charter contained a broad statement of purposes, including: To acquire lands; to improve, develop, and manage real estate; to hold stock; to borrow or lend money; and to mortgage, sell, lease, or otherwise dispose of any lands. The charter also states that petitioner's duration was perpetual.

At the time of incorporation, petitioner's total authorized stock was worth $1,200, divided into 12 shares of common stock with a par value of $100 per share. Originally, six shareholders owned stock in petitioner, including James F. Hooper (Hooper) and Paul R. Chamblee (Chamblee). Each of the six original shareholders owned two shares of common stock. Under petitioner's bylaws, a shareholder could transfer his interest to an outsider only after having offered such shares to petitioner at market value. In 1974, one shareholder sold his stock to the remaining five shareholders. One year later, another shareholder sold his stock to the remaining four. Finally, in 1982, two more shareholders sold their stock to Hooper and Chamblee, leaving each a 50-percent owner of petitioner.

Pursuant to its bylaws, petitioner's business and property would be managed by a board of directors, elected by the shareholders. The board, in turn, would delegate managerial duties to corporate officers by electing a president, vice president, and secretary-treasurer. The officers' main function would be to oversee the corporation's daily affairs, including authorizing written contracts of the corporation, signing all stock certificates, keeping minutes of all proceedings, and safeguarding the corporation's moneys. Both Hooper and Chamblee have served on petitioner's board of directors since 1971. During 1993, Hooper also acted as president and, together with

Chamblee, executed the petition in this case on the corporation's behalf.

At the time of its incorporation, petitioner acquired approximately 450 acres of land, improved with a cabin.  The shareholders used the cabin as a private hunting lodge during the years 1971 through 1993.  On January 30, 1971, 10 days after incorporation, the six original shareholders signed an agreement stating that the property would be used by the six "original and sole owners and partners" of the hunting club and their immediate families as a recreational facility only.  The agreement also states that none of the six will make or produce a product nor sell his shares or hunting rights to outsiders, and, if at any time one of the "six partners" wishes to withdraw from the "partnership," he must sell his shares to the other partners only.

Petitioner secured an employer identification number and filed corporate Federal income tax returns on Form 1120 for 1980 through 1993.  On its Federal income tax returns, petitioner depreciated the cabin and reported net income for the years 1980 through 1986, and 1990.  Chamblee never reported any share of petitioner's net income on his personal Federal income tax returns.

On February 5, 1993, petitioner sold the property to Champion International Corporation (Champion) for $168,750.  On September 7, 1993, petitioner was dissolved.  That same year, its

last annual report was filed with Alabama's secretary of state's office. The sale, in 1993, was reported on petitioner's Federal income tax return, showing no gain because petitioner reported both the sales price and adjusted basis of the property as $33,730. During its life, petitioner did not rent or lease the property to others. It did not keep books, maintain a bank account, or hold regular meetings. Using personal checks and cash, petitioner's shareholders covered the expenditures for repairs and improvements made on the property.

Respondent determined in the notice of deficiency that petitioner must include the gain of $112,053 from the sale of the property in its 1993 income but that it was entitled to deduct an unused loss carryover from 1992 of $9,290.

Discussion

Respondent's determination that petitioner must report its realized gain on the 1993 sale of property is presumed to be correct, and petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933).

Hooper and Chamblee, as officers of petitioner, argue that they did not intend to incorporate petitioner and did not know, until 1995, that a lawyer friend had, in fact, incorporated it. They contend that petitioner was not a business venture, and its corporate existence should therefore be disregarded.

State law determines whether a corporation has been organized. See Stoody v. Commissioner, 66 T.C. 710, 716 (1976);

Skarda v. Commissioner, 27 T.C. 137, 144 (1956), affd. 250 F.2d 429 (10th Cir. 1957); sec. 301.7701-1(c), Proced. & Admin. Regs.[1] Federal law, on the other hand, determines how the entity is to be taxed. See Burk-Waggoner Oil Association v. Hopkins, 269 U.S. 110 (1925); Carver v. United States, 188 Ct. Cl. 202, 412 F.2d 233 (1969); Stoody v. Commissioner, supra at 716-717; sec. 301.7701-1(c), Proced. & Admin. Regs.

Under Alabama law, a corporation exists when the articles of incorporation are filed. Ala. Code sec. 10-2B-2.03(a) (1975). Petitioner's certificate of incorporation was filed with the proper authorities in Alabama on January 20, 1971; thus, petitioner began to exist on that date as a separate body authorized to do business in Alabama.

Although the State of Alabama has conferred the label of "corporation" on petitioner, that does not, per se, control its status for Federal tax purposes. See section 301.7701-1(c), Proced. & Admin. Regs., which holds open the possibility that a State-chartered corporation could also be classified a trust for Federal tax purposes.

Section 7701(a)(3) defines the term "corporation" to include "associations, joint-stock companies, and insurance companies." Oftentimes, definitional problems arise where an entity without a

---

[1] The cited Federal tax regulation makes clear that it defers to local law to determine the rights and obligations that members of an organization have among themselves and with third parties.

State corporate charter possesses the attributes of a corporation so as to be treated as one for Federal tax purposes. In this case, however, we have before us an incorporated entity wishing to disavow that form.

We shall not disregard a corporation for Federal tax purposes if either (1) the corporation was formed for business purposes, or (2) its creation is followed by the carrying on of business activity. See Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Petitioner's tax existence under Federal law is established if either test is satisfied. See Carver v. United States, supra at 236. Rarely is a corporation's tax identity ignored, unless it is a sham. See Bennett Paper Corp. v. Commissioner, 699 F.2d 450, 452 (8th Cir. 1983), affg. 78 T.C. 458 (1982); Strong v. Commissioner, 66 T.C. 12, 22 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977).

Hooper and Chamblee argue that petitioner conducted no business activity--that it merely held naked record title to the property and therefore it "never [was] a business venture". We disagree and find, under the second part of the Moline Properties, Inc. test, that petitioner actually engaged in business.[2]

---

[2]We offer no opinion as to whether the first part of the test under Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943), is also satisfied.

Only a minimal amount of business activity is required to meet the second prong of the Moline Properties, Inc. test. See Britt v. United States, 431 F.2d 227, 237 (5th Cir. 1970); Tomlinson v. Miles, 316 F.2d 710, 714 (5th Cir. 1963). We believe that the formation of petitioner was followed by business activity in the ordinary meaning. See National Investors Corp. v. Hoey, 144 F.2d 466, 468 (2d Cir. 1944). Petitioner's activity began with the adoption of bylaws, the election of officers and directors, and the issuance of stock. It included petitioner's buying and selling the property in question, securing an employer identification number, filing corporate Federal income tax returns, taking depreciation deductions on the hunting lodge, and reporting net income. Indeed, for most of the years in which petitioner filed Federal income tax returns, it reported having income.[3] Under these circumstances, we find that petitioner was active enough to justify holding that it did engage in business. The absence of books and a bank account, and the failure to hold corporate meetings are not decisive on that question. See Paymer v. Commissioner, 150 F.2d 334, 336 (2d Cir. 1945), affg. in part and revg. in part a Memorandum Opinion of this Court dated Jan. 2, 1943. The decision to recognize or not to recognize the tax identity of a corporation depends upon what the corporation does,

---

[3]The record, however, contains no evidence as to the source of that income.

not what it is called, how many or how few own it, <u>or how they
regard it</u>.  <u>Carver v. United States</u>, <u>supra</u> at 237.

Hooper and Chamblee, among others, created petitioner for
their joint advantage.  Real and substantial benefits inured to
petitioner's shareholders, including the privilege of limited
liability, the opportunity to continue petitioner's existence in
the event of a shareholder's death or withdrawal, the ability of
petitioner to hold title to and sell property, and the ability of
each individual shareholder to transfer his ownership interest in
petitioner.

Under the Internal Revenue Code, taxpayers are free to
arrange their affairs as they choose; however, having made that
choice, they must accept the resulting tax consequences, whether
fully contemplated or not.  See <u>Commissioner v. National Alfalfa
Dehydrating & Milling Co.</u>, 417 U.S. 134, 149 (1974).  Because
taxpayers may select the form in which they do business, the
choice of entity is generally binding.  <u>Crouch v. United States</u>,
692 F.2d 97, 99 (10th Cir. 1982); see also <u>Bradley v. United
States</u>, 730 F.2d 718, 720 (11th Cir. 1984).  Whatever the purpose
may have been in choosing to incorporate petitioner, so long as
that purpose is the equivalent of business activity or is
followed by the corporation's carrying on business, the
corporation remains a separate taxable entity.  See <u>Moline
Properties Inc. v. Commissioner</u>, <u>supra</u> at 438-439.  We hold that

the shareholders did in fact use petitioner to such an extent that its separate identity must be recognized.

We sustain respondent's determination in the notice of deficiency that the sale of the property, in 1993, resulted in a taxable gain to petitioner in the amount of $112,053 and that petitioner is entitled to a net operating loss carryover from 1992 in the amount of $9,290.  To reflect the foregoing,

<u>Decision will be entered for respondent</u>.